# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO: 1:22-CV-717-WO-JLW

ANGELICA ROSE BROWN,

       Plaintiff,

     v.

UNIVERSITY OF NORTH
CAROLINA at CHAPEL HILL;
SHIMUL MELWANI (in her
individual capacity); SREEDHARI
DESAI (in her individual capacity);
MICHAEL CHRISTIAN (in his
individual capacity); BOARD OF
GOVERNORS OF THE
UNIVERSITY OF NORTH
CAROLINA;

       Defendants.

**BRIEF IN SUPPORT OF
UNIVERSITY DEFENDANTS'
MOTION TO DISMISS**

## Introduction

Angelica Rose Brown was a Ph.D. candidate at UNC-Chapel Hill's

Kenan-Flagler Business School. She enrolled in August 2020. Almost

immediately, she believed that the research objectives of her Organizational

Behavior faculty advisors were incompatible with her own ideas as a student.

Specifically, the objectives conflicted with her "professional brand."

The subject matter of this academic research addressed race and

gender in the workplace. But Brown's ultimate transition from the Ph.D.

1

program to a master's degree program was not influenced by her gender, race, or disability. Rather, the transition was the product of disagreements and failed interactions with the program's faculty.

## Statement of the Case

On August 30, 2022, Brown filed a complaint against the Board of Governors of the University of North Carolina, the University of North Carolina at Chapel Hill (University Defendants), Shimul Melwani, Sreedhari Desai, and Michael Christian. Compl. at 1; ECF 1. The complaint asserts ten causes of action:

1.  A section 1981 disparate treatment claim (against all Defendants);

2.  A section 1981 retaliation claim (against all Defendants);

3.  A disparate treatment Title VII claim (against UNC-CH);

4.  A retaliation Title VII claim (against UNC-CH);

5.  A discrimination Title VI claim (against UNC-CH);

6.  A discrimination Rehabilitation Act claim (against UNC-CH and the Board);

7.  A wrongful discharge claim (against UNC-CH and the Board);

8.  A State constitutional claim (against UNC-CH and the Board);

9.  A tortious interference with contract claim (against the Individual Defendants); and

2

10.  A failure to accommodate claim under the Americans with Disabilities Act.

Defendants waived service making their responsive pleadings due November 18, 2022. ECF 7, 8. The University Defendants move to dismiss all claims against them.[1]

## Statement of the Facts[2]

### A.  Brown's enrollment.

On March 23, 2020, Brown was accepted into the Ph.D. Organizational Behavioral Program at UNC-CH's Kenan-Flagler Business School. Compl ¶ 39. As part of Brown's participation in the Ph.D. program, Brown became a Graduate Research Assistant (GRA). Compl. ¶ 40. A GRA is "[a] graduate student, enrolled as a full-time student, and engaged in research activities directly related to their program of study under the supervision or in collaboration with a member of the graduate faculty." Compl. ¶ 44.

Brown was a GRA for Fiscal Year 2020-2021, Compl. ¶ 40, and continued in this position until at least May 2022, Compl. ¶ 44. During this time, her salary was "$33,333.36 in August 2020, which eventually increased

---

[1]  The Individual Defendants are separately filing their own Motion to Dismiss.

[2]  While Brown's allegations are assumed to be true for the purposes of this motion, the University Defendants reserve the right to contest the allegations at the appropriate time if the case proceeds.

3

to a rate of $34,444.44 by May 2022." *Id.* Brown does not allege that she was terminated from her GRA position.

## B.    Brown's first semester.

On August 1, 2020, Brown's enrollment began. Compl. ¶ 39. Prior to the start of classes, Brown alleges that she registered her disability—PTSD— with UNC-CH's Accessibility Resources and Services. Compl. ¶ 49.

Within three months of starting business school, Brown perceived fundamental differences between her personal research objectives as a student and those of her faculty advisors. On October 2, 2020, Melwani invited Brown to work with her and Christian, Brown's primary advisor, on a code-switching[3] idea. Compl. ¶ 56. Later that month, according to Brown, Melwani and Christian decided to shift their focus to Black-on-Black peer pressure in the workplace, and the faculty authors directed Brown accordingly. Compl. ¶ 57.

Brown disagreed with this change in focus. Compl. ¶ 57. She "made it clear" that she did not agree with the new topic and that the new topic was not consistent with Brown's "preferred emphasis." *Id.* Melwani and Christian

---

[3]    Brown considers code-switching to be the variation of speech styles or interactive behavior in settings with persons of other races or ethnicities. Compl. ¶ 56.

4

allegedly replied that she lacked expertise in focusing work for publication in an academic journal and raised concerns about her ability to grasp the foundation of their research. Compl. ¶ 58.

Brown withdrew from the project on November 4, 2020, just 33 days after receiving her professors' invitation. Compl. ¶¶ 56, 59. She was concerned that her professors' approach was inconsistent with her own research objectives and "did not wish to align her professional brand with a narrative" she believed would be embraced by those who disagreed with her perspective. Compl. ¶ 59.

In the final months of 2020, Brown had a second disagreement with Christian while recruiting external partners to join their research team for a Spring 2021 code-switching project. Compl. ¶ 61. Christian proposed a doctoral candidate. Compl. ¶ 62. Brown instead proposed recruiting a Howard University professor. Compl. ¶ 63. According to Brown, Christian declined her suggestion because they would need to obtain direct approval from the Chair of the department. *Id.*

Thus, by the end of her first semester, Brown had withdrawn from a project and was stuck in a disagreement with her primary advisor.

5

### C. Brown's second semester.

In January 2021, Christian informed Brown that he could no longer advise her on the 2021 code-switching project. Compl. ¶ 66. In spring 2021, Desai became Brown's second advisor, supervising three projects: code-switching, motherhood, and colorism. Compl. ¶¶ 30, 67. In late March 2021, Desai told Brown to focus exclusively on Brown's own code-switching project. Compl. ¶ 73.

Brown's disagreements with faculty continued and affected her collaboration with Desai. In May 2021, Brown raised concerns about Desai's administration of a research survey. Compl. ¶ 74. Brown believed that participant compensation was too low, despite Desai's explanation of budget constraints. Compl. ¶ 75.

To supplement the budget, Brown tried but failed to secure supplemental grant funding. Compl. ¶ 76. Brown then went to Melwani expressing her concerns and offered to pay for the research. Compl. ¶¶ 76, 77. Melwani explained that funding must be derived from a professor's budget. Compl. ¶ 77. On June 1, 2021, Brown requested that she be assigned to another advisor—her third in her first ten months. Compl. ¶ 79.

On July 30, 2021, Brown received her annual review, which evaluated her in three areas: (1) classwork, (2) research, and (3) faculty and student

interactions. Compl. ¶ 89. After her evaluation, Brown was informed that she did not have a path forward in the Ph.D. program, and could transfer to another program or exit with a master's degree in May 2022. Compl. ¶ 98. Brown graduated with a master's degree and continued her academic career. Compl. ¶¶ 9, 127.

### D.     Brown's reports of discrimination.

On June 17 or 18, 2021, Brown made a discrimination complaint with the EOC office at UNC-CH. Compl. ¶¶ 87, 99.

On March 30, 2022, Brown alleges that she filed an EEOC charge asserting that she had been discriminated against by UNC-CH because of her race, gender, and disability. Compl ¶ 22. On June 5, 2022, the EEOC issued a Right to Sue Letter. Compl ¶ 23.

## Questions Presented

I.     Can Brown assert section 1981 or section 1983 claims against the University Defendants, who are agents of the State?

II.     Can Brown assert a wrongful-discharge claim against the University Defendants, who are agents of the State?

III.     Can Brown assert a State constitutional claim against the University Defendants, who are agents of the State?

IV.     Has Brown alleged sufficient facts to support either of her Title VII claims?

7

V.      Has Brown alleged sufficient facts to support her Title VI claim?

VI.     Has Brown alleged that UNC-CH refused to provide her with an accommodation under the Americans with Disabilities Act?

VII.    Has Brown alleged a discrimination claim under section 504 of the Rehabilitation Act?

## Argument

Brown asserts nine legally defective claims against the University Defendants. These claims are defective for seven reasons.

First, Brown cannot assert a section 1981 or section 1983 claim against the State, and the University Defendants are agents of the State.

Second, there is no private right of action for wrongful discharge under section 143-422.2 of the North Carolina General Statutes. And, even if Brown is asserting a common-law claim for wrongful discharge, it is barred by sovereign immunity.

Third, Eleventh Amendment immunity bars Brown's State constitution claim.

Fourth, Brown's Title VII claims are untimely. Even if they are timely, she has not alleged facts to support her retaliation or disparate treatment theories. Regarding retaliation, Brown does not allege that she engaged in a protected activity or suffered an adverse employment action. Regarding disparate treatment, Brown has not alleged that her job performance was

8

satisfactory, that she suffered an adverse employment action, or that she was treated differently from similarly situated employees.

Fifth, Brown's Title VI claim is derivative of her Title VII disparate treatment claim, so it fails for the same reasons.

Sixth, Brown's ADA claim is untimely. Even if it is timely, Brown has not alleged that UNC-CH refused to provide her with an accommodation.

Seventh, Brown's claim under the Rehabilitation Act fails because she has not alleged that she was qualified to continue in the program or that she was discriminated against solely based on her disability.

## Legal Standard for Dismissal

Brown's section 1981, section 1983, wrongful discharge, and State constitution claims are all barred by sovereign immunity or Eleventh Amendment immunity. Under federal law, when a defendant raises sovereign immunity, it may be addressed under either Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Fleming v. Va. State Univ.,* No. 3:15-cv-268, 2016 WL 927186, at *1 n.4 (E.D. Va. Mar. 4, 2016). Thus, the University Defendants move to dismiss these claims under Rules 12(b)(1) and 12(b)(6).

Under Rules 12(b)(1) and 12(b)(6), the Court should grant the University Defendants' motion to dismiss because the complaint fails to

allege sufficient facts to establish that this Court has subject-matter jurisdiction. *See Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009).

The University Defendants move to dismiss Brown's other claims against them under Rule 12(b)(6). The Court should dismiss Brown's claims because even if all factual inferences are drawn in her favor, she has failed to allege facts that allow this Court to reasonably infer that the University Defendants are liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I. Both of Brown's section 1981 claims fail.

Brown asserts two section 1981 claims against the University Defendants. Both claims fail because under section 1981 there is no direct cause of action against a state. Even if Brown argues that she is relying on section 1983[4] to assert her section 1981 claims, they still fail for two reasons: (1) sovereign immunity and Eleventh Amendment immunity bar section 1983 claims against the University Defendants; and (2) the University Defendants are not considered a person within the meaning of section 1983.

---

[4] Brown specifically notes that her section 1981 claim against the Individual Defendants is effectuated by section 1983. Compl. ¶¶ 141, 149. There is no similar allegation for the University Defendants.

### A.  The University Defendants are agencies of the State.

Section 1981 does not provide Brown with "a private right of action against a state actor." *NAACP v. City of Myrtle Beach*, 476 F. Supp. 3d 308, 325 (D.S.C. 2020); *see also Howell v. N.C. Cent. Univ.*, No. 1:16-CV-576, 2017 WL 2861133, at *12 (M.D.N.C. July 5, 2017).

The University Defendants are state actors. Section 116-3 of the general statutes creates the University of North Carolina System. The UNC System is composed of 17 constituent institutions. N.C. Gen. Stat. § 116-4. The System and its constituent institutions, including UNC-CH, are agencies of the State. *See, e.g.*, *Bd. of Governors of Univ. of N.C. v. U.S. Dep't of Labor,* 917 F.2d 812, 816 (4th Cir. 1990); *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1139 n.6 (4th Cir. 1990); *McAdoo v. Univ. of N.C.*, 248 F. Supp. 3d 705, 719 (M.D.N.C. 2017).

Thus, Brown cannot assert a section 1981 claim against the University Defendants.

### B.  Sovereign immunity bars Brown's claims.

Under the Eleventh Amendment, the State is generally immune from suit unless it has waived its immunity. *Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-54 (2011); *see also* 33 Richard Murphy, Federal Practice and Procedure § 8351 (2d ed. 2020). In addition, Congress may

11

abrogate a state's sovereign immunity with appropriate legislation. *Stewart*, 563 U.S. at 253-54. However, without a "waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 254.

With respect to section 1983 claims, the State has not waived its immunity, and "Congress did not intend to abrogate state sovereign immunity" when it passed section 1983. *Quinn v. N.C. Dep't of Health & Hum. Servs.*, No. 3:19-cv-00391-FDW-DCK, 2020 WL 369290, at *4 (W.D.N.C. Jan. 22, 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-68 (1989)).

Thus, the University Defendants, as agents of the State, are immune from section 1983 claims.

## C. The University Defendants are not "persons" within the meaning of section 1983.

To state a claim under section 1983, Brown "must aver that *a person* acting under color of state law deprived [her] of a constitutional right or a right conferred by a law of the United States." *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 (4th Cir. 2009) (emphasis added). Brown cannot do this because the University Defendants are not considered persons.

As explained above, the University Defendants are agencies of the State. *See supra* I(A). As agencies of the State, the University Defendants are

not considered "persons" within the meaning of section 1983. *See Googerdy v. N.C. Agr. & Tech. State Univ.*, 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005) (citing *Will*, 491 U.S. at 71). Thus, Brown cannot assert a section 1983 claim against them.

*    *    *

For these three reasons, Brown's claims under section 1981 against the University Defendants fail.

## II.  Brown's wrongful discharge claim fails.

Brown's contention that the University Defendants wrongfully discharged her fails for two reasons: (1) there is no private right of action under section 143-422.2, and (2) sovereign immunity bars the claim.

### A.  There is no private right of action under section 143-422.2.

Brown asserts that the University Defendants have violated section 143-422.2 of the North Carolina General Statutes. Compl. ¶ 179. This statute is part of North Carolina's Equal Employment Practices Act. N.C. Gen. Stat. §§ 143-422.1 to 422.3.

While this act expresses the public policy of the State, it does not confer a private cause of action or statutory remedy. *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 724 (W.D.N.C. 2012); *cf Leonard v. Wake Forest Univ.*, 877

13

F. Supp. 2d 369, 372 (M.D.N.C. 2012) (noting that there is a common-law claim for wrongful discharge). Therefore, Brown cannot rely on section 143-422.2 to assert a wrongful discharge claim against the University Defendants.

**B.    Sovereign immunity prevents Brown from asserting a common-law claim for wrongful discharge.**

Even if Brown is asserting a common-law claim for wrongful discharge, her claim still fails.

As previously explained, the University Defendants are entitled to sovereign and Eleventh Amendment immunity absent a waiver of immunity. *See supra* I(B). With respect to tort claims, the State has agreed to a limited waiver of sovereign immunity that allows citizens to file negligence claims against the State in the Industrial Commission. N.C. Gen. Stat. § 143-291; *see also Wood v. N.C. State Univ.*, 147 N.C. App. 336, 343, 556 S.E.2d 38, 43 (2001). This waiver does not extend to the tort of wrongful discharge. *See Paquette v. Cnty. of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717-18 (2002).

Therefore, immunity bars Brown's claim for wrongful discharge. *See, e.g.*, *Cherry v. Elizabeth City State Univ.*, No. 2:13-CV-71-D, 2014 U.S. Dist. LEXIS 133478, at *1-2 (E.D.N.C. Sep. 23, 2014); *Dai v. Univ. of N.C. at*

14

*Chapel Hill*, No. 1:02-CV-224, 2003 WL 22113444, at *5 (M.D.N.C. Sept. 2, 2003).

*     *     *

For these reasons, Brown's wrongful-discharge claim fails.

## III. Eleventh Amendment immunity bars Brown's State constitutional claim.

Brown cannot assert her North Carolina Constitutional claim against the University Defendants in federal court.

Again, under the Eleventh Amendment the State is immune from suit unless there has been a waiver of immunity. *See supra* I(B). The State has not "waived its immunity from claims brought under the state constitution generally or under Article I, Section 19 specifically." *Maisha v. Univ. of N.C.*, No. 1:12-CV-371, 2013 WL 1232947, at *3 (M.D.N.C. Mar. 27, 2013), *aff'd*, 641 F. App'x 246 (4th Cir. 2016).[5]

Therefore, the Eleventh Amendment bars Brown's State constitutional claim.

---

[5]     This analysis would be different if removal occurred because removal results in the waiver of Eleventh Amendment immunity. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002).

## IV. Brown's Title VII claims are legally defective.

Brown asserts two Title VII claims against UNC-CH. One under a theory of retaliation and the other under a theory of disparate treatment. Both claims are unsuccessful.

First, both claims are untimely. Second, regarding Brown's retaliation claim, Brown has not alleged that she engaged in a protected activity or suffered an adverse employment action. Finally, regarding Brown's disparate treatment claim, Brown's job performance was unsatisfactory, she has not suffered an adverse employment action, and she was not treated differently from similarly situated employees.

### A. Brown's Title VII claims are untimely.

Brown's Title VII claims are untimely because all the alleged unlawful employment practices occurred more than 180 days before she filed her charge of discrimination with the EEOC.

Under 42 U.S.C. § 2000e-5(e)(1) Brown had to file her claim within 180 days of the alleged unlawful employment practice. *See Howell*, 2017 WL 2861133, at *10-11. Each allegedly unlawful practice must separately satisfy the 180-day test. *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (citing *Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101, 113 (2002)).

16

Brown alleges that she filed her EEOC charge on March 30, 2022.
Compl. ¶ 22. Accordingly, any alleged unlawful employment practice had to
occur between October 1, 2021, which is 180 days before March 30, 2022, and
March 30, 2022. Thus, any alleged unlawful employment practice that
occurred before October 1, 2021, cannot support Brown's Title VII claims.

Here, Brown has not clearly identified the alleged unlawful
employment practices. Compl. ¶¶ 156, 162. Presumably, she is relying on the
disparate treatment she identifies in paragraph 139 of her complaint. All this
conduct occurred before her July 30, 2021, meeting when she was informed
that "she did not have a path forward in the Ph.D. program." Compl. ¶ 98; *see*
Compl. ¶ 139. Thus, Brown has not identified any alleged unlawful
employment practices that occurred between October 1, 2021 and March 30,
2022.

As a result, Brown's Title VII claims are untimely.

### B. Brown has not alleged facts to support her retaliation theory.

To state a claim for retaliation, Brown must allege that (1) she engaged
in a protected activity; (2) that UNC-CH took an adverse employment action;
and (3) a causal connection between the protected activity and adverse

17

employment action. *Roberts v. Glenn Indus. Grp.*, 998 F.3d 111, 122 (4th Cir. 2021). Brown has not alleged facts to support any of these elements.

Under Title VII the type of protected activity that Brown must engage in is complaining about "discrimination based upon 'race, color, religion, sex or national origin.'" *Id.* (quoting *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013)). Brown does not allege that she complained about race or sex discrimination prior to any alleged retaliatory conduct occurring.[6] Rather, she alleges that in June 2021, she "lodged an official complaint of discrimination," Compl. ¶ 87, and reported "what she believed to be a pattern of discriminatory behavior within her program." Compl. ¶ 83. These allegations are insufficient to support an inference that Brown's June complaints were about race or sex discrimination.

Even if Brown did complain about race or sex discrimination, she has not alleged that she suffered an adverse employment action.[7]

---

[6]    Brown does allege that in March 2022, her EEOC charge claimed she was discriminated against because of her race and gender. Compl. ¶ 22 However, this is after any alleged retaliatory conduct already occurred.

[7]    Even if Brown's removal from the Ph.D. program is considered an adverse employment action, her claim still fails. Brown alleges that the Individual Defendants began discussing her removal from the program on June 2, 2021, Compl. ¶ 81, which is at least three days before June 5, 2021, the earliest possible date she allegedly complained of discrimination. Compl. ¶ 83.

18

An adverse employment action is one "that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). The "typical requirements for a showing of an 'adverse employment action'" are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Alexander v. City of Greensboro*, No. 1:09-CV-934, 2011 WL 13857, at *15 (M.D.N.C. Jan. 4, 2011) (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)).

Here, Brown does not allege that she was demoted, her pay was reduced, she lost a job title or supervisory responsibilities, or she missed opportunities for promotion. Rather, Brown remained employed as a Graduate Research Assistant until she graduated in May 2022. Compl. ¶¶ 44, 127. At which time, she was no longer eligible to work as a GRA. *See* Compl. ¶ 44. Furthermore, while working as a GRA, she received a raise. *Id.* Thus, there are no allegations that support a plausible inference that Brown suffered an adverse employment action.

19

Given that Brown has not alleged that she engaged in a protected activity or that she suffered an adverse employment action, there can be no causal connection between two events that did not occur.

As a result, Brown has failed to state a Title VII claim for retaliation.

## C.   Brown has not alleged facts to support her disparate treatment theory.

To state a claim for discrimination under Title VII, Brown must allege that (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) she was treated differently from "similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). Brown has not alleged that her job performance was satisfactory, she suffered an adverse employment action, or that she was treated differently from similarly situated employees.

Brown's job performance was unsatisfactory. As a GRA, Brown "engaged in research activities directly related to [her] program of study under the supervision or in collaboration with a member of the graduate faculty." Compl. ¶ 44. Yet, Brown was unable to successfully fulfill these requirements.

20

Brown withdrew from a project with Melwani and Christian because she did not agree with the direction of the project. Compl. ¶ 59. Brown had a disagreement with Christian over research partners on a second project. Compl. ¶ 63. Following a dispute with Desai over funding for a third research project, Brown requested a new advisor. Compl. ¶ 79.

These disputes culminated in Brown's review noting that she discontinued research projects and did not interact well with faculty. Compl. ¶¶ 94, 96. Thus, Brown's job performance was unsatisfactory because she was unable to successfully conduct research under the supervision of a faculty member or in collaboration with graduate faculty. *See* Compl. ¶ 44.

As discussed above, Brown did not suffer an adverse employment action. *See supra* IV(B). Brown remained employed as a GRA the entire time she was enrolled at UNC-CH, and she received a raise. *See* Compl. ¶ 44. Thus, there are no allegations that support a plausible inference that Brown suffered an adverse employment action.

Finally, Brown has not identified any similarly situated employees who were treated differently than her.

Initially, Brown identifies three other "students;" however, she does not allege that they were also employed as GRAs. Compl. ¶ 121. Further, she only identifies the race of one student, but not the other two. Compl. ¶

21

121(A)-(C). Thus, it is impossible to determine if two of the students are outside of Brown's protected class.

Even if the white student were working as a GRA, the remaining allegations are insufficient to show that this white student is similarly situated to Brown. Compl. ¶ 121(A).

Employees are similarly situated if they deal with the same supervisor, are "subject to the same standards," and engage in similar conduct without differentiating or mitigating circumstances. *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992)). It is Brown's burden to show that she is similarly situated "in all relevant respects" to her comparator. *Id.* Brown has not met this burden.

Brown alleges that the "white female student was given latitude to work a project prioritizing women's issues." Compl. ¶ 121(A). There are no allegations that this student had the same faculty advisor as Brown or withdrew from projects that did not align with her professional brand. *See* Compl. Thus, the allegations do not give rise to a reasonable inference that Brown and this white student, or any other student, are similarly situated.

As a result, Brown has not stated a claim for disparate treatment under Title VII.

22

**V.     Brown has not alleged facts to state a Title VI claim.**

Brown's Title VI claim is a restatement of her Title VII disparate treatment claim. *Compare* Compl. ¶169, *with* Compl. ¶¶ 156, 162. Under such circumstances, courts apply Title VII's disparate-treatment framework to Title VI claims. *Middlebrooks v. Univ. of Md.*, No. 97-2473, 1999 WL 7860, at *4 (4th Cir. Jan. 11, 1999) (per curiam); *see also Smith v. Va. Hous. Dev. Auth.*, 437 F. Supp. 3d 486, 506-07 (E.D. Va. 2020) (analyzing Title VII and Title VI claims together). Thus, Brown's Title VI claim fails for the same three reasons her Title VII disparate treatment claim fails.

First, Brown has not alleged that her job performance was satisfactory. *See supra* IV(C). Brown's job was to engage "in research activities directly related to [her] program of study under the supervision or in collaboration with a member of the graduate faculty." Compl. ¶ 44. Yet, Brown was unable to collaborate with or work under the supervision of faculty members.

Second, Brown did not suffer an adverse employment action. *See supra* IV(C). Brown remained employed as a GRA until she graduated, at which time, she was no longer qualified to work as a GRA. In addition, she received a raise in 2022. Compl. ¶ 44.

Finally, Brown has not alleged that she was treated differently from similarly situated employees. *See supra* IV(C). At best, Brown has identified

23

one white female student as a comparator, but she has not alleged that they are similarly situated. Compl. ¶ 121. She has not alleged that the white student had the same supervisor, engaged in similar conduct, or was subject to the same standards.

Thus, just like her Title VII claim, Brown's Title VI claim fails.

## VI. Brown has not alleged facts to state a claim under the Americans with Disabilities Act.

Brown's ADA claim fails for at least two reasons. First, her claim is untimely.[8] Second, even if her claim is timely, she has not alleged that she requested an accommodation or that UNC-CH failed to accommodate her.

### A. Brown's ADA claim is untimely.

Just like under Title VII, Brown must file an EEOC charge within 180 days of the alleged adverse employment action before she can file her claim in federal court. *See Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012).

Here, Brown alleges that she filed her EEOC charge on March 30, 2022. Compl. ¶ 22. She also alleges that the adverse employment action was

---

[8] This argument applies to the extent Brown's claim is asserted under Title I of the ADA. *Davis v. Univ. of N.C.*, 263 F.3d 95, 100 (4th Cir. 2001) (noting that the EEOC is charged with enforcing Title I of ADA).

her removal from the Ph.D. program. Compl. ¶ 208. While the University Defendants dispute that removal from an academic program is an adverse employment action, this decision was conveyed to Brown on July 30, 2021, Compl. ¶ 89, which is more than 180 days before March 30, 2022.

As a result, Brown's ADA claim is untimely.

## B.     Brown was not denied an accommodation.

Even if Brown's claim is timely, it still fails because she did not clearly request an accommodation, and she has not alleged that UNC-CH refused to make an accommodation.

To state a claim under Title II of the ADA, Brown must allege that she (1) has a disability; (2) is "otherwise qualified for the benefit in question;" and "(3) was excluded from the benefit due to [disability] discrimination." *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999). There are three different theories that can support the third element: "(1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Balt. Cnty., Md.,* 515 F.3d 356, 362 (4th Cir. 2008). Brown relies on the third theory: that UNC-CH failed to make reasonable accommodations. Compl. at 25.

Under this theory, Brown must allege that she requested an accommodation and that UNC-CH refused to grant the accommodation. *See*

25

*Doe v. Lees-McRae Coll.*, No. 1:20-CV-105-MR-WCM, 2021 WL 1096285, at *4 (W.D.N.C. Feb. 4, 2021), *R & R adopted*, No. 1:20-CV-00105-MR-WCM, 2021 WL 1093635 (W.D.N.C. Mar. 22, 2021). Further, Brown's accommodation request must be clear enough that UNC-CH would understand that the request was for a disability accommodation. *See id.*

Here, Brown has not alleged what accommodation she requested because of her PTSD. Brown alleges that she told Christian "that she anticipated needing periodic scheduling accommodations including potential extensions on research projects due to the legal and emotional aftermath of her assault and rape." Compl. ¶ 52. She also alleges that she missed a lecture in October 2020 because "she was preparing to attend a court hearing regarding her request for a protective order." Compl. ¶ 55. These allegations do not create a plausible inference that Brown was requesting extensions of time as an accommodation for her PTSD.

However, even if Brown had requested extensions of time as an accommodation for her PTSD, her claim would still fail because she was never denied this accommodation. Specifically, Brown alleges that the extensions were granted. Compl. ¶ 6. She does not allege that a requested extension was ever denied. *See* Compl.

As a result, UNC-CH granted Brown's requested accommodation.

26

*     *     *

For these reasons, Brown has not stated a claim under the ADA.

## VII. Brown has not alleged facts to state a Rehabilitation Act claim.

To state a claim under section 504 of the Rehabilitation Act, Brown must allege that she (1) has a disability; (2) is otherwise qualified for the benefit in question; and (3) "was excluded from the benefit due to discrimination solely on the basis of [the] disability." *Baird*, 192 F.3d at 467. Brown has not alleged that she was qualified for the benefit or that she was discriminated against *solely* based on her disability.

To show that she is qualified for the program, Brown must allege that she can "with or without reasonable modifications" meet the "'essential eligibility requirements' for participation in [the] program." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2012) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)). She can do this by alleging facts to show that (1) she meets the essential eligibility requirements of the program, and (2) if not, whether any reasonable accommodation would enable her to meet those requirements. *Id.*

In the ADA context, courts have dismissed claims when the plaintiff alleges "facts showing poor job performance unrelated to [the plaintiff's]

27

disability." *Hoelzer v. Bd. of Governors of the Univ. of N.C.*, No. 1:20-CV-1072, 2022 WL 973069, at \*9 (M.D.N.C. Mar. 31, 2022).[9] Brown's allegations are similar.

She has alleged that she was unable to meet the requirements of the program for reasons unrelated to her disability. Specifically, she details her disagreements with faculty over the direction of research, her disagreement with a faculty member over how to conduct research, and that she needed at least three different advisors during her first year. Compl. ¶¶ 56-79. All these issues are unrelated to her disability. Thus, even with a reasonable accommodation (which she was given) she was unable to meet the requirements of the program.[10]

Further, even if Brown were qualified, her claim still fails because the alleged facts show that she was not removed from the Ph.D. program "solely based" on her disability. 29 U.S.C. § 794(a).

For example, in *Lewin v. Medical College of Hampton Roads*, the court dismissed the plaintiff's Rehabilitation Act claim because the plaintiff

---

[9]    ADA case law is persuasive given the similarities between the ADA and Rehabilitation Act. *See Baird*, 192 F.3d at 468-70 (discussing the similarities and differences between the ADA and Rehabilitation Act).

[10]    The Court can also dismiss Brown's ADA claim because she did not meet the essential eligibility requirements with or without an accommodation.

admitted that the defendants "based their decision to dismiss Plaintiff on a number of factors, which may have included a perceived disability." 910 F. Supp. 1161, 1172 (E.D. Va. 1996), *aff'd*, 131 F.3d 135 (4th Cir. 1997). As a result, the plaintiff could not establish that he was discriminated against solely based on his disability. *Id.*

The same is true here. Brown has identified many reasons for her dismissal other than her disability. These include her inability to work with faculty, her lack of academic progress, and low research output. Compl. ¶¶ 90-96. Thus, by Brown's own admission she was not dismissed from the program solely based on her disability.

For these reasons, Brown has not stated a claim under section 504 of the Rehabilitation Act.

## Conclusion

Brown's claims against the University Defendants should be dismissed for all the reasons explained above.

This 18th day of November, 2022.

JOSHUA H. STEIN
Attorney General

/s/ Kenzie M. Rakes
Kenzie M. Rakes
Special Deputy Attorney General
NC State Bar No. 46349
krakes@ncdoj.gov

North Carolina Department of Justice
PO Box 629
Raleigh, NC  27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

I certify that, in accordance with Rule 7.3(d)(1) of the Local Civil Rules of Practice and Procedure, the attached brief (excluding the parts excluded by rule) contains fewer than 6250 words.

This the 18th day of November, 2022.

/s/ Kenzie M. Rakes
Kenzie M. Rakes
Special Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the **BRIEF IN SUPPORT OF UNIVERSITY DEFENDANTS' MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users, including Plaintiff's counsel, Valerie L. Bateman (valerie@newsouthlawfirm.com); Artur Davis (adavis@hkm.com); and Lisa Walker (lisa@lisawalkerlaw.com).

This the 18th day of November, 2022.

                                             /s/ Kenzie M. Rakes
                                             Kenzie M. Rakes
                                             Special Deputy Attorney General