## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CIVIL ACTION NO: 1:22-CV-717-WO-JLW

| | |
|---|---|
| ANGELICA ROSE BROWN,<br><br>       Plaintiff,<br><br>   v.<br><br>UNIVERSITY OF NORTH CAROLINA at CHAPEL HILL; SHIMUL MELWANI (in her individual capacity); SREEDHARI DESAI (in her individual capacity); MICHAEL CHRISTIAN (in his individual capacity); BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA;<br><br>       Defendants. | **BRIEF IN SUPPORT OF DEFENDANTS SHIMUL MELWANI, SREEDHARI DESAI, AND MICHAEL CHRISTIAN'S MOTION TO DISMISS** |

## Introduction

Angelica Rose Brown alleges that the Individual Defendants discriminated against her because she is Black. However, there are no allegations in the complaint that suggest any of the Individual Defendants have any issue with Brown because of her race. Rather, the allegations confirm that any issues between the Individual Defendants and Brown centered over the direction and progress of research projects. While the research in question involved issues of race, the content of the research does

1

not transform an academic disagreement with Brown into racial discrimination.

## Statement of the Case

On August 30, 2022, Brown filed a complaint against the Board of Governors of the University of North Carolina, the University of North Carolina at Chapel Hill, Shimul Melwani, Sreedhari Desai, and Michael Christian. Compl. at 1; ECF 1. The Individual Defendants are all sued in their individual capacities. *Id.* The complaint asserts ten causes of action:

1. A section 1981 disparate treatment claim (against all Defendants);

2. A section 1981 retaliation claim (against all Defendants);

3. A disparate treatment Title VII claim (against UNC-CH);

4. A retaliation Title VII claim (against UNC-CH);

5. A discrimination Title VI claim (against UNC-CH);

6. A discrimination Rehabilitation Act claim (against UNC-CH and the Board);

7. A wrongful discharge claim (against UNC-CH and the Board);

8. A State constitutional claim (against UNC-CH and the Board);

9. A tortious interference with contract claim (against the Individual Defendants); and

10.    A failure to accommodate under the Americans with Disabilities Act.[1]

Thus, Brown is asserting a total of three claims against the Individual Defendants: (1) a race discrimination claim under section 1981, (2) a retaliation claim under section 1981; and (3) a tortious interference with contract claim.

Defendants waived service making their responsive pleadings due November 18, 2022. ECF 9, 10, 11. The Individual Defendants move to dismiss all claims against them.[2]

## Statement of the Facts

While Brown's allegations are assumed to be true for the purposes of this motion, the Individual Defendants reserve the right to contest the allegations at the appropriate time if the case proceeds.

Christian, Desai, and Melwani are all professors in the Organizational Behavior Department at UNC-CH's Kenan-Flagler Business School. Compl. ¶¶ 16, 18, 20. The Organizational Behavior Department studies human

---

[1]    Brown does not identify who this claim is against. The Individual Defendants assume it is not against them because "individual defendants do not face personal liability under the Americans with Disabilities Act." *Swaim v. Westchester Acad., Inc.*, 170 F. Supp. 2d 580, 583 (M.D.N.C. 2001).

[2]    UNC-Chapel Hill and the Board are separately filing their own Motion to Dismiss.

behavior within organizations (usually the workplace). All three of these professors have special areas of focus. Christian focuses on human energy, resilience, and work engagement. Desai focuses on gender, race, and sexual orientation within organizations as well as ethical decision-making. Melwani's research lies at the intersection of emotion, diversity, and relationships in the workplace.

While they have different areas of focus, they all have something in common: they had a less than ideal working relationship with Brown. Compl. ¶¶ 56-77.

## A. Brown's alleged interactions with Christian.

Brown started her Ph.D. program on August 1, 2020. Compl. ¶ 39. Christian (a white male) was Brown's initial academic advisor. Compl. ¶¶ 21, 56.

Brown started working on a code-switching[3] idea with Christian and Melwani on October 2, 2020. Compl. ¶ 56. Later that month, Brown alleges that Christian and Melwani asked Brown "to shift the article's focus to Black-on-Black peer pressure in the workplace." Compl. ¶ 57. Brown, who had been

---

[3]    Code-switching is "the switching from the linguistic system of one language or dialect to that of another." *Code-switching*, Merriam-Webster, https://www.merriam-webster.com/dictionary/code-switching.

a Ph.D. student for two months, said she disagreed with this shift in focus. *Id.* According to Brown, Christian and Melwani responded by telling her that she "lacked the expertise to evaluate the appropriate focus for an academic journal." Compl. ¶ 58. On November 4, 2020, three months into the Ph.D. program and one month after starting the project, Brown withdrew from the project. Compl. ¶ 59.

Towards the end of 2020, while working on a new code-switching project, Brown and Christian had another disagreement. This time they disagreed over the third person they ought to work with. Christian proposed a Ph.D. candidate like Brown, while Brown proposed a Howard University professor. Compl. ¶¶ 62-63. Brown asserts that Christian did not want to work with the Howard professor because it would require approval from the chair of the department. Compl. ¶ 63. Ultimately, Christian told Brown in January 2021, five months after she started the Ph.D. program, that he did not believe he could advise her on her code-switching project because they could not agree on who to work with. Compl. ¶ 66.

**B.    Brown's alleged interactions with Desai.**

In February 2021, Desai (an Indian American female) became Brown's primary advisor for Brown's code-switching project. Compl. ¶¶ 19, 67. In addition, during the Spring 2021 semester, Brown and Desai worked on two

5

other projects: (1) a motherhood project; and (2) a colorism project. Compl. ¶ 73. However, by the end of March 2021, Desai suggested that Brown focus on her code-switching project, so they stopped working together on the other projects. *Id.*

Then in May 2021, Brown allegedly questioned how much Desai was paying Black research participants on the code-switching project. Compl. ¶ 74. Brown believed that the participants should be paid more, but Desai explained that they had to work within a $45 budget. Compl. ¶ 75. Brown started looking for other funding sources, but was unable to find funding. Compl. ¶ 76-77. So, Brown suggested that she pay for the research herself. Compl. ¶ 77. However, this was not permitted because funding had to come from a professor's budget. *Id.*

According to Brown, the funding dispute angered Desai to the point that Brown felt she had no choice but to request a new academic advisor. Compl. ¶ 79. On June 1, 2021, 10 months into the Ph.D. program, Brown was looking for her third academic advisor. *Id.*

### C.    Brown's alleged interactions with Melwani.

Brown's interactions with Melwani (an Indian American female) were more limited. Compl. ¶ 17. Melwani worked with Brown and Christian on the initial code-switching project in October 2020. Compl. ¶ 56. This is the project

where, according to Brown, Melwani and Christian informed Brown, who had been a Ph.D. student for two months, that she "lacked the expertise to evaluate the appropriate focus for an academic journal." Compl. ¶ 58. Brown removed herself from the project on November 4, 2020. Compl. ¶ 59.

Melwani interacted with Brown again in the Spring of 2021. At this time, Brown was seeking guidance on whether she could pay for research herself. Compl. ¶ 77. Melwani responded that funding had to come from a professor's budget. *Id.*

### D. Brown's annual review.

On July 30, 2021, essentially one year after starting the Ph.D. program, Brown received her annual review. Comp. ¶ 89. It covered three areas: (1) coursework; (2) research; and (3) faculty and student interactions.

Regarding coursework, the review noted that multiple professors complained about how frequently Brown asked for extensions of time. Compl. ¶ 90. According to Brown, it also stated that she was not making "adequate progress academically." Compl. ¶ 92. In response, Brown notes that during the fall semester her grades were two high passes and two passes. *Id.* In the spring, she also received two high passes and two passes. *Id.* While Brown's listing of these grades suggest that Brown believed her academic progress was good, she acknowledges earlier in her complaint, that Christian gave her

7

a pass in his class but that the "other members of her class received a grade of" high pass. Compl. ¶ 64.

Regarding research, the review noted that Brown "had discontinued projects she had initially launched." Compl. ¶ 94. According to Brown, during her first year, she stopped working on three projects for various reasons. Compl. ¶¶ 59, 73.

As for faculty and student interactions, the review noted that Brown had "burned bridges with faculty." Compl. ¶ 96. During the first five months of the program, Christian stopped being Brown's academic advisor. Compl. ¶ 66. Then, four months later, Brown decided she needed to request a new advisor because she could no longer work with Desai. Compl. ¶ 79. Thus, Brown required a total of three academic advisors during her first 12 months.

## Questions Presented

I.     Has Brown alleged facts to support a section 1981 claim?

II.     Even if Brown could state a section 1981 claim, has she alleged facts to support her disparate treatment or retaliation theory?

III.     Has Brown alleged sufficient facts to overcome the Individual Defendants' entitlement to qualified immunity?

IV.     Has Brown alleged facts to support her claim for tortious interference with contract?

8

## Argument

Brown asserts three claims against the Individual Defendants: (1) section 1981 disparate treatment; (2) section 1981 retaliation; and (3) tortious interference with contract. All three claims fail for at least four reasons.

First, Brown has not alleged facts to support the key elements of a section 1981 claim. She has not alleged that her employment contract was interfered with and she has not alleged but for causation.

Second, even if she could state a section 1981 claim, she has not alleged facts to support her retaliation or disparate treatment theories. Regarding retaliation, Brown has not alleged that she complained about race discrimination or that she suffered an adverse employment action. Regarding disparate treatment, Brown has not alleged that she suffered an adverse employment action, that her job performance was satisfactory, or that she was treated differently from a similarly situated individual.

Third, the Individual Defendants are entitled to qualified immunity. Brown has not plausibly alleged a violation of federal law. And, even if she had plausibly alleged a violation of federal law, the legal principle at issue is not clearly established.

Fourth, Brown has not alleged facts to state a claim for tortious interference with contract. She has not alleged that UNC-CH breached her

9

employment agreement, that the Individual Defendants' conduct was unjustified, or that she was damaged.

## Legal Standard for Dismissal

The Individual Defendants move to dismiss Brown's claims against them under Rule 12(b)(6). The Court should dismiss Brown's claims because even if all factual inferences are drawn in her favor, she has failed to allege facts that allow this Court to reasonably infer that the Individual Defendants are liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I. Brown has not alleged facts to support the key elements of a section 1981 claim.

Brown asserts two section 1981 claims[4] against the Individual Defendants: one under a theory of disparate treatment, and the other under a theory of retaliation. Before addressing these specific theories, Brown must satisfy the key elements of a section 1981 claim. She cannot.

---

[4] Brown relies on section 1983 to assert her section 1981 claims against the Individual Defendants. Compl. ¶¶ 141, 149. She must do this because section "1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity." *Howell v. N.C. Cent. Univ.*, No. 1:16-CV-576, 2017 WL 2861133, at *12 (M.D.N.C. July 5, 2017) (quoting *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012)).

Both claims possess the same flaws: (1) Brown has not identified a contractual relationship that the Individual Defendants interfered with; and (2) she has not alleged but for causation.

### A. The Individual Defendants have not interfered with Brown's employment contract.

As Brown acknowledges, section 1981 secures the right of all persons to have the same right to make and enforce contracts. Compl. ¶¶ 137, 147. This includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Here, Brown appears to argue that the Individual Defendants prevented her from enjoying all the benefits of her employment contract.[5] Compl. ¶¶ 137, 147. However, the facts, as alleged by Brown, do not support this assertion.

Regarding her employment, she alleges that she had a fiscal year 2020-2021 employment agreement to work as a Graduate Research Assistant. Compl. ¶ 40. She does not allege an agreement for fiscal year 2021-2022 or

---

[5] To the extent Brown claims that the Individual Defendants interfered with her right to get a Ph.D., Compl. ¶ 148, she has not alleged any facts to show a contractual right to a Ph.D. *See* Compl.; *see also Neal v. Univ. of N.C.*, No. 5:17-CV-00186-BR, 2018 WL 2027730, at *7 (E.D.N.C. May 1, 2018) (finding no identifiable promise to confer a degree).

any other time. However, she notes that her compensation started "at a rate of $33,333.36 in August 2020, which eventually increased to a rate of $34,444.44 by May 2022." Compl. ¶ 44. May 2022 is when Brown graduated with a master's degree. Compl. ¶ 127. Thus, it appears that Brown was compensated as a Graduate Research Assistant until her graduation.[6] Further, Brown never asserts that she lost her employment as a Graduate Research Assistant while she was a student at UNC-CH.

Moreover, according to Brown, a Graduate Research Assistant is a "graduate student, enrolled as a full-time student, and engaged in research activities directly related to their program of study." Compl. ¶ 44. Thus, when Brown graduated, she was no longer eligible to work as a Graduate Research Assistant.

As a result, there are no allegations to support an inference that the Individual Defendants interfered with Brown's employment contract.

### B. Even if Brown's employment contract were interfered with, her claim would still fail because she has not alleged but for causation.

The Supreme Court recently clarified that to state a section 1981 claim Brown "must initially plead and ultimately prove that, but for race, [she]

---

[6]    Because Brown was paid until she graduated, she has also failed to allege that the Individual Defendants' conduct actually damaged her.

would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Brown does not do this.

She conclusorily states: "[a]s the direct and proximate result of the Defendants' violations of § 1981, [Brown] has suffered substantial damages." Compl. ¶ 144, *see also* Compl. ¶¶ 145, 152-53. But, her conclusory allegations relate to damages, not the interference with her contract due to race.

In addition, the facts Brown relies on to support her claims do not show but for causation. Brown states that her "competence and capacities were minimized," and her research was interfered with and unsupported by her academic advisors. Compl. ¶ 139(a); *see also* Compl ¶¶ 139, 148. There is no indication that any of this conduct occurred because of Brown's race. Rather, the complaint reveals that this conduct arose out of disagreements over the direction of or how to run various research projects.

For example, Brown alleged that she had a dispute with Christian and Melwani over the direction of their code-switching project. Compl. ¶ 57. Christian and Melwani told Brown—a first-year Ph.D. candidate—that "she lacked the expertise to evaluate the appropriate focus of an academic journal." Compl. ¶ 58. Brown states that she withdrew from the project because "she did not wish to align her professional brand with a narrative

that she felt was at odds with the realities of the African-American experience." Compl. ¶ 59.

But for the fact that Brown's research involved racial issues, race is not at issue. It is not Brown's race, but rather the content of the research that injects race into this interaction. In fact, nothing from this interaction suggests that Brown's race was a factor, let alone the but for cause of Melwani and Christian telling Brown that she did not have the expertise to evaluate the focus of a research project for an academic journal. Further, it was Brown who removed herself from the project because she did not agree with its narrative.

Brown's interactions with Desai were of a similar nature. For example, Brown complained about the amount of money a research project would pay Black research participants. Compl. ¶ 74. Desai explained that the project had to operate within a $45 budget. Compl ¶ 75. Brown thought that this budget was insufficient, so she tried to find other funding sources and even offered to pay for the research herself. Compl. ¶ 77. However, there were no other funding sources and Brown was told that she could not pay for the research herself. *Id.* As a result of this interaction, Brown decided to ask for a new academic advisor. Compl. ¶ 79.

14

Again, it is the race of the research participants—not Brown's race—that inserts race into this discussion. As with Brown's interactions with the other Individual Defendants, there is no indication that Brown's race was the but for cause of this disagreement, which she initiated. Rather, the entire dispute is about the availability of research funds. And, in response, Brown decided she no longer wanted Desai as an advisor.

Thus, a review of the complaint reveals that there are no allegations that would allow this Court to plausibly infer that but for Brown's race she would not have suffered the loss of a legally protected right.

*       *       *

For these reasons, Brown cannot state a section 1981 claim under any theory.

**II.      Even if Brown had alleged that the Individual Defendants interfered with her employment contract because of her race, she has not alleged facts to state a claim under either legal theory she relies on to support her deficient 1981 claims.**

Brown relies on two different legal theories to support her section 1981 claims: (1) retaliation, and (2) disparate treatment. She has not alleged facts to support either theory.

15

### A. The alleged facts to not support a plausible inference that the Individual Defendants retaliated against Brown.

To state a claim for retaliation, Brown must allege that (1) she engaged in a protected activity; (2) the Individual Defendants took an adverse employment action against her; and (3) a causal connection between the protected activity and the adverse action. *Farmer v. Lowe's Co.*, 188 F. Supp. 2d 612, 618 (W.D.N.C. 2001). Brown does not allege facts to support any of these elements.

### i. Brown did not complain about race discrimination.

Under section 1981, the type of protected activity that Brown must engage in is complaining of racial discrimination. *Id.* Brown never alleges that she complained about *racial* discrimination. Rather, she alleges that she "lodged an official complaint of discrimination," Compl. ¶ 87, and reported "what she believed to be a pattern of discriminatory behavior within her program." Compl. ¶ 83. There are many types of discrimination and the complaint does not provide context that allows for a reasonable inference that these complaints were about racial discrimination. In fact, while not directed against the Individual Defendants, Brown complains about gender and disability discrimination in her complaint.

As a result, Brown has not alleged that she engaged in an activity that is protected by section 1981.

### ii. Brown has not suffered an adverse employment action.

Next, even if Brown had complained about race discrimination, her claim would still fail because she did not suffer an adverse employment action.

An adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., v. Ellerth*, 524 U.S. 742, 761 (1998)).[7] Brown has not alleged an adverse employment action.

Here, Brown was not fired, and her job responsibilities were not changed. She remained employed as a Graduate Research Assistant until she graduated in May 2022. Compl. ¶¶ 44, 127. At which time, she could no longer work as a Graduate Research Assistant. *See* Compl. ¶ 44. Furthermore, during her time working as a Graduate Research Assistant,

---

[7]     Even though *Hoyle* is a Title VII case, it is instructive because Title VII and section 1981 retaliation claims have the same elements. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015).

she received a raise. *Id.* Thus, there are no factual allegations that support a plausible inference that Brown suffered an adverse employment action.

### iii. There can be no causal connection between the protected activity and adverse employment action.

Finally, there can be no causal connection between two events that never occurred. Brown has not alleged that she engaged in a protected activity. *See supra* II(A)(i). And even if she did, Brown did not suffer an adverse employment action. *See supra* II(A)(ii). Thus, there can be no causal connection between the protected activity and the adverse employment action.

\* \* \*

For these reasons, Brown has failed to allege facts to support her section 1981 retaliation claim.

### B. The alleged facts to not support Brown's disparate treatment theory.

To state a claim for disparate treatment under section 1981, Brown must allege that: "(1) [she] is a member of a protected class; (2) [she] suffered an adverse employment action; (3) [her] job performance was satisfactory at the time of the adverse employment action; and (4) [she] was treated differently from similarly situated employees outside [her] protected class."

18

*Parks v. Louisiana-Pac. Corp.*, 400 F. Supp. 3d 393, 412 (W.D.N.C. 2019).
Brown has failed to allege that she suffered an adverse employment action,
that her job performance was satisfactory, or that she was treated differently
from similarly situated employees.

### i.    Brown has not suffered an adverse employment action.

As explained above, Brown was not fired, her job responsibilities were
unchanged, and she remained employed as a Graduate Research Assistant
until she graduated. Compl. ¶¶ 44, 127. Upon graduation, Brown was no
longer eligible to work as a Graduate Research Assistant. *See* Compl. ¶ 44.
Thus, there are no factual allegations that support a plausible inference that
Brown suffered an adverse employment action. *See supra* II(A)(ii).

### ii.    Brown's job performance was unsatisfactory.

As a Graduate Research Assistant, Brown "engaged in research
activities directly related to [her] program of study under the supervision or
in collaboration with a member of the graduate faculty." Compl. ¶ 44.
Because Brown was unable to collaborate with faculty members, her job
performance was unsatisfactory.

Brown withdrew from a project with Melwani and Christian because
she did not agree with the direction of the project. Compl. ¶ 59. Brown had a

disagreement with Christian over who they should collaborate with on a project. Compl. ¶ 63. Also, following a dispute over funding for a research project with Desai, Brown requested a new advisor. Compl. ¶ 79.

These disputes culminated in Brown's review noting that she discontinued research projects and did not interact well with faculty. Compl. ¶¶ 94, 96. Given that Brown's job was to engage in research under the supervision or in collaboration with faculty, Compl. ¶ 44, and she failed to do so, her job performance was unsatisfactory.

Thus, the factual allegations support a plausible inference that Brown's job performance was substandard.

### iii. Brown has not identified any similarly situated employees who were treated differently.

Brown must allege that she was treated differently from a similarly situated employee outside of her protected class. *See Parks*, 400 F. Supp. 3d at 414. Brown fails to do this. She has not identified other similarly situated employees.

Initially, Brown identifies three other "students;" however, she does not allege that they were also employed as Graduate Research Assistants. Compl. ¶ 121. Further, she only identifies the race of one student and does not allege

20

the race of the other two. Compl. ¶ 121(A)-(C). Thus, it is impossible to tell if two of the students are outside of Brown's protected class.

Even if the white student were working as a Graduate Research Assistant, the remaining allegations are insufficient to show that this white student was similarly situated to Brown. Compl. ¶ 121(A).

Employees are similarly situated when they have similar duties, similar performance reviews, similar qualifications, and report to the same supervisor. *Parks*, 400 F. Supp. 3d at 414 (discussing supervisors and standards); *Franklin v. Flowserve FSD Corp.*, No. 6:14-CV-00040, 2015 WL 6756921, at *9 (W.D. Va. Nov. 5, 2015) (discussing performance and qualifications).

Here, Brown alleges that the "white female student was given latitude to work a project prioritizing women's issues." Compl. ¶ 121(A). There are no allegations that this student had the same amount of experience as Brown, was in the same program as Brown, or even reported to the same faculty supervisor. *See* Compl. Thus, there are no allegations that give rise to a reasonable inference that Brown and this white student are similarly situated.

21

*    *    *

For these reasons, Brown has failed to allege facts to support her disparate treatment claim under section 1981.

## III.  The Individual Defendants are entitled to qualified immunity.

At the pleading stage, qualified immunity bars individual capacity claims unless (1) the complaint plausibly alleges a violation of federal law, and (2) the legal principle at issue is clearly established. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Neither of these elements are present.

### A.  Brown has not plausibly alleged her federal claims.

As explained above, Brown has not plausibly alleged a violation of federal law. Specifically:

- Brown has not identified any contract that she was unable to enjoy the benefit of while she was a student at UNC-CH. *See supra* I(A).

- Brown has not alleged that but for her race she would not have suffered the loss of a legally protected right. *See supra* I(B).

- Brown has not alleged a section 1981 retaliation claim because she did not allege that she complained about race discrimination or that she suffered an adverse employment action. Thus, there can be no causal connection between the protected activity and the adverse employment action. *See supra* II(A).

- Brown has not alleged a section 1981 disparate treatment claim because she did not suffer an adverse employment action, her job performance was unsatisfactory, and she was not treated

22

differently from a similarly situated employee. *See supra* II(B). Thus, Brown has not plausibly alleged a violation of federal law.

## B. The legal principles at issue are not clearly established.

Even if Brown had alleged a plausible claim for relief, the legal principle at issue is not clearly established. A legal principle is clearly established if, at the time of the defendant's challenged conduct the principle is clear enough "that every 'reasonable official would [have understood] that what he is doing violates'" that principle. *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, "qualified immunity affords protection to an officer who takes an action that is not clearly forbidden—even if the action is later deemed wrongful." *Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir. 2001).

To determine if a principle is clearly established, the principle must be evaluated in "the specific context of the case," not at "a high level of generality." *Allen v. Cooper*, 895 F.3d 337, 356 (4th Cir. 2018), *aff'd*, 140 S. Ct. 994 (2020) (quoting *Adams v. Ferguson*, 884 F.3d 219, 226-27 (4th Cir. 2018)). Here, the specific legal questions are:

- Was it clearly established, under the circumstances faced by the Individual Defendants, that providing feedback on research projects that they were supervising or working with Brown on would violate her right to enjoy the benefit of her employment

23

contract under section 1981?

- • Was it clearly established, under the circumstances faced by the Individual Defendants, that providing an evaluation of a student's academic performance would violate her right to enjoy the benefit of her employment contract under section 1981?

As explained below, the answer to both questions is no.

Under either of Brown's section 1981 theories, she must suffer an adverse employment action. However, it is not clearly established that a negative review is an adverse action. In fact, if a negative review does not alter the "terms, conditions, or benefits of her employment" it is not considered adverse. *Gurganus v. Beneficial N.C., Inc*, 25 F. App'x 110, 112 (4th Cir. 2001).

Here, Brown's negative review did not alter the "terms, conditions, or benefits of her employment." *Id.* She was employed as a Graduate Research Assistant until she graduated; at which time she was no longer eligible to work as a Graduate Research Assistant. Thus, the Individual Defendants' conduct did not clearly interfere with Brown's employment contract.

This conclusion is reinforced by the Supreme Court's clarification that Brown "must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp.*, 140 S. Ct. at 1019. As previously discussed, Brown has not alleged that her race was the but for cause of the Individual Defendants' conduct. Rather, the

24

allegations show that Brown and the Individual Defendants had disputes over how to conduct research. This academic dispute does not become racial discrimination simply because the research was about race.

Therefore, the Individual Defendants' conduct of providing feedback is not clearly forbidden.

*     *     *

For these reasons, the Individual Defendants are entitled to qualified immunity.

## IV. Brown has not alleged facts to state a claim for tortious interference with contract.

To state a claim for tortious interference Brown must allege that: (1) there is a valid contract between her and UNC-CH; (2) that the Individual Defendants knew about the contract; (3) that the Individual Defendants intentionally induced UNC-CH not to perform the contract; (4) they induced UNC-CH not to perform without justification; and (5) Brown was actually damaged by the Individual Defendants conduct. *See United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

Brown's claim fails for at least three reasons:

1.     The Individual Defendants could not induce UNC-CH to breach her employment agreement because there was no breach.

25

2.  Even if they did induce UNC-CH to breach the contract, their conduct was justified.

3.  Brown was not actually damaged because she was compensated for work as a Graduate Research Assistant until she graduated.

## A.  UNC-CH did not breach Brown's employment agreement.

Brown asserts that the Individual Defendants interfered with her UNC-CH employment agreement. Compl. ¶¶ 198-200. The facts do not support this assertion.

Brown alleges an employment agreement to work as a Graduate Research Assistant for fiscal year 2020-2021. Compl. ¶ 40. Brown never alleges that her 2020-2021 employment agreement was breached.

In fact, Brown admits that she was compensated "at a rate of $33,333.36 in August 2020, which eventually increased to a rate of $34,444.44 by May 2022," Compl. ¶ 44, when Brown graduated with a master's degree, Compl. ¶ 127. Thus, Brown was employed as a Graduate Research Assistant until she graduated. At that point, Brown was not qualified to work as a Graduate Research Assistant because a Graduate Research Assistant must be "enrolled as a full-time student." Compl. ¶ 44.

As a result, there are no allegations to support an inference that UNC-CH breached an agreement with Brown or that the Individual Defendants intentionally induced UNC-CH to breach Brown's employment agreement.

26

**B. Even if UNC-CH breached the employment agreement, the Individual Defendants' conduct is privileged.**

North Carolina recognizes a distinction between outsiders and non-outsiders to a contract. *Combs v. City Elec. Supply Co.*, 203 N.C. App. 75, 84, 690 S.E.2d 719, 725 (2010). An outsider is a third-party who has no business interest in the subject matter of the contract. *Id.* A non-outsider has a legitimate interest in the subject matter of the contract, even though he is not a party to the contract. *Id.* An example of a non-outsider is a supervisor who has a "professional interest in [a] plaintiff's performance of his duties." *Privette v. Univ. of N.C. at Chapel Hill*, 96 N.C. App. 124, 134, 385 S.E.2d 185, 191 (1989).

Here, the Individual Defendants are non-outsiders. Specifically, Brown was employed as a Graduate Research Assistant, which is "a graduate student, enrolled as a full-time student, and engaged in research activities directly related to their program of study under the supervision or in collaboration with a member of the graduate faculty." Compl. ¶ 44. Brown alleges that she was supervised by or worked in collaboration with each of the Individual Defendants. Compl. ¶ 57, 72. As a result, the Individual Defendants had a legitimate interest in the subject-matter of the contract. *See Privette*, 96 N.C. App. at 134, 385 S.E.2d at 191.

27

As non-outsiders, the Individual Defendants are entitled to qualified immunity from liability. *See Lenzer v. Flaherty*, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (1992). To defeat this immunity, Brown must show that the Individual Defendants acted with legal malice, which is the "intentional doing of the harmful act without legal justification." *Childress v. Abeles*, 240 N.C. 667, 675, 84 S.E.2d 176, 182 (1954).

General allegations of malice are insufficient. The complaint must contain factual allegations to support a claim of malice. *Loyd v. Griffin*, No. 20-CVS-2394, 2021 WL 5865360, at *6 (N.C. Bus. Ct. Dec. 10, 2021). In other words, a claim for tortious interference "must admit of no motive for [the] interference other than malice." *Beck v. City of Durham*, 154 N.C. App. 221, 232, 573 S.E.2d 183, 191 (2002).

Here, Brown alleges that the wrongful conduct was "providing false and misleading information about her academic performance and collegiality." Compl. ¶ 200. But, the complaint plainly identifies a motive other than malice for the content of Brown's annual review: a difference of opinion between Brown and the Individual Defendants.

For example, Brown decided to withdraw from the code-switching project with Christian and Melwani because she did not agree with the direction of the project. Compl. ¶ 59. In addition, Brown and Christian

28

disagreed about who should work with them on a second project. Brown wanted to work with a professor from Howard, but Christian did not because it would require approval from the chair of the department. Compl. ¶ 63. Finally, Brown and Desai had a disagreement over the amount of money Black research participants would be paid due to the amount of the budget. Compl. ¶ 75.

None of these factual allegations suggest that the Individual Defendants were acting with legal malice when they noted, on her review, that Brown had discontinued projects or did not have a good working relationship with faculty members. Compl. ¶¶ 94, 96. Furthermore, the Individual Defendants' account that Brown was not getting along with faculty appears to be consistent with Brown's version of events.

Thus, there are no allegations that the Individual Defendants, who had a legitimate interest in reviewing Brown's work, acted with malice when they reviewed her.

### C. Even if the Individual Defendants' conduct is not privileged, Brown has not been damaged.

Brown contends that the "Individual Defendants' conduct directly and proximately caused [her] to suffer actual damages." Compl. ¶ 202. The facts do not support this contention.

29

As previously explained, Brown was paid as a Graduate Research Assistant until she graduated in May 2022. Compl. ¶¶ 44, 127. Furthermore, according to Brown, she had to be enrolled as a full-time student to be a Graduate Research Assistant. Compl. ¶ 44. Because Brown received compensation for working as a Graduate Research Assistant until she graduated, she has failed to allege that the Individual Defendants' conduct actually damaged her.

*     *     *

For these reasons, Brown has not stated a claim for tortious interference with contract.

## Conclusion

Brown's claims against the Individual Defendants should be dismissed for the reasons explained in this brief.

This 18th day of November, 2022.

JOSHUA H. STEIN
Attorney General

/s/ Kenzie M. Rakes
Kenzie M. Rakes
Special Deputy Attorney General
NC State Bar No. 46349
krakes@ncdoj.gov

North Carolina Department of Justice
PO Box 629
Raleigh, NC  27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

I certify that, in accordance with Rule 7.3(d)(1) of the Local Civil Rules of Practice and Procedure, the attached brief (excluding the parts excluded by rule) contains fewer than 6250 words.

This 18th day of November, 2022.

/s/ Kenzie M. Rakes
Kenzie M. Rakes
Special Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the **BRIEF IN SUPPORT OF DEFENDANTS SHIMUL MELWANI, SREEDHARI DESAI, AND MICHAEL CHRISTIAN'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users, including Plaintiff's counsel, Valerie L. Bateman (valerie@newsouthlawfirm.com); Artur Davis (adavis@hkm.com); and Lisa Walker (lisa@lisawalkerlaw.com).

This 18th day of November, 2022.

/s/ Kenzie M. Rakes
Kenzie M. Rakes
Special Deputy Attorney General

33