# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANGELICA ROSE BROWN,     )
    )
    Plaintiff,     )
    )
    v.     )         1:22CV717
    )
THE UNIVERSITY OF NORTH     )
CAROLINA AT CHAPEL HILL,     )
et al.,     )
    )
    Defendants.     )

## <u>ORDER AND RECOMMENDATION OF</u><br><u>UNITED STATES MAGISTRATE JUDGE</u>

Before this Court are two motions: (1) Plaintiff's Second Motion for Leave to File a Second Amended Complaint ("SAC") (Docket Entry 59 ("SAC Motion")), and (2) a consent motion entitled "Joint Motion to Amend the Parties' Joint Rule 26(f) Report" (Docket Entry 66 ("26(f) Motion")). The parties have briefed these motions and they are ripe for disposition.

Relatedly, also pending but not referred to the undersigned are two motions: (1) Defendants' Motion for Summary Judgment (Docket Entry 68), and (2) a motion entitled "Plaintiff's Motion to Stay Deadline to Respond to Defendants' Motion for Summary Judgment and for Oral Argument on the Pending Motion to Amend Complaint" (capitalization removed) (Docket Entry 70 ("Motion to Stay")). Those motions are not ripe but are susceptible to disposition as discussed below.

For the reasons stated herein, the undersigned orders that the SAC Motion is granted and that the 26(f) Motion is granted; the undersigned recommends that the Motion for Summary

1

Judgment be administratively denied without prejudice to refiling at the conclusion of discovery and that the Motion to Stay be denied as moot.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Angelica Rose Brown ("Plaintiff") is a Black woman who was previously enrolled in an Organizational Behavioral Ph.D. Program at the University of North Carolina at Chapel Hill's Kenan-Flagler Business School ("KFBS"). (Amended Complaint ("Am. Compl.") (Docket Entry 26) ¶ 1.) She initiated this action after Defendants[1] allegedly unlawfully discriminated and retaliated against her and inhibited her from completing her Ph.D. at KFBS and from being accepted at other comparable Ph.D. programs elsewhere. (*See generally* Am. Compl.) A detailed overview of the factual allegations in this case is provided in the Court's Order entered October 20, 2023 (Docket Entry 37 at 2-21).[2] *Brown v. Univ. of N. Carolina at Chapel Hill*, No. 1:22-CV-717, 2023 WL 6958987, at *1 (M.D.N.C. Oct. 20, 2023), *reconsideration denied*, No. 1:22-CV-717, 2024 WL 2701613 (M.D.N.C. May 24, 2024).

Plaintiff was issued a Right to Sue Letter by the EEOC on June 5, 2022. (Am. Compl. ¶ 23.) Plaintiff filed her original Complaint (Docket Entry 1) on August 30, 2022, and filed an

---

[1] Plaintiff originally named as Defendants the University of North Carolina at Chapel Hill ("UNC-CH") and the Board of Governors of the University of North Carolina (together, the "University Defendants"), as well as Shimul Melwani (Assistant Professor of Organizational Behavior at UNC-CH, Associate Dean, program coordinator of Plaintiff's Ph.D. Program, and Ph.D. Coordinator in charge of Plaintiff's annual review), Shreedhari Desai (Assistant Professor of Organizational Behavior at UNC-CH and one of Plaintiff's principal academic advisors), and Michael Christian (one of Plaintiff's principal academic advisors, one of the writers of her annual review, and a decision-maker in her termination from the Ph.D. Program) (together, the "Individual Defendants"). (Am. Compl. ¶¶ 14-20.) The Individual Defendants were terminated from the instant action on October 20, 2023, pursuant to the Court's Order granting their Motion to Dismiss. (Docket Entry 37.) Thus, the University Defendants are the only remaining Defendants in this action.

[2] All citations herein to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

unopposed Motion to Amend said Complaint (Docket Entry 21) on December 21, 2022. This Court granted said Motion on January 3, 2023, and later that day Plaintiff filed her Amended Complaint. (Am Compl.)[3] Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Docket Entries 27, 29), and on October 20, 2023, the Court dismissed all of Plaintiff's claims except her claim for Race Discrimination in Violation of Title VI of the Civil Rights Act of 1965, 42 U.S.C.A. § 2000(d) ("Title VI"). (Docket Entry 37.)

Plaintiff subsequently filed a motion entitled "Motion for Reconsideration of the District Court's Order Dismissing Counts I and II of Plaintiff's Amended Complaint." (Docket Entry 39 (capitalization removed).) The Court denied that motion, finding that Plaintiff "did not previously allege facts or provide any legal argument supporting the existence of a contract between herself and UNC-CH relating to her enrollment as a student and cannot do so" on a motion for reconsideration. (Docket Entry 46 at 7.) Then, in Plaintiff's First Motion for Leave to File a SAC, Plaintiff sought to correct prior pleading deficiencies by amending her Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), in an attempt to revive her previously dismissed claims brought under 42 U.S.C. § 1981 (Claims I and II). (*See* Docket Entry 47.) The Court denied that motion as well, finding that Plaintiff's Section

---

[3] Plaintiff originally alleged ten claims for relief: Disparate Treatment Under 42 U.S.C. §§ 1981 and 1983 (Count I), Unlawful Retaliation Under 42 U.S.C. §§ 1981 and 1983 (Count II), Disparate Treatment in Violation of Title VII of the Civil Rights Act of 1964 (Count III), Retaliation in Violation of Title VII of the Civil Rights Act of 1964 (Count IV), Race Discrimination in Violation of Title VI, 42 U.S.C. § 2000d (Count V), Discrimination in Violation of the Rehabilitation Act, 29 U.S.C. § 794 (Count VI), Wrongful Discharge in Violation of Public Policy (Count VII), Violation of Article I, Section 19 of the North Carolina Constitution (Count VIII), Tortious Interference with Contractual Relationships (Count IX), and Disability Failure to Accommodate (Count X). (*See generally* Am. Compl.)

3

1981 claims were dismissed on the merits with prejudice and could not be revived through her proposed amended complaint, and that even if the Court had not dismissed said claims with prejudice Plaintiff's proposed amendment would be futile. (*See* Docket Entry 52.)

Thereafter, Defendants filed their Answer to the Amended Complaint (Docket Entry 53) and the parties subsequently conferred pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and submitted a joint report and discovery plan, which this Court approved. (Docket Entries 55, 56.) The discovery plan gave Plaintiff until November 7, 2024, to request leave to amend her pleadings. On November 2, 2024, Plaintiff filed the SAC Motion, in which she once again moved for leave to amend the Amended Complaint, this time pursuant to Federal Rule of Civil Procedure 15(c)(1)(B) ("Rule 15(c)(1)(B)"). (Docket Entry 59.) In said Motion, Plaintiff seeks to modify language in the Amended Complaint, add a Title VI retaliation count, and add factual allegations related to alleged race discrimination. (*See id.* at 3.)

On April 7, 2025, the parties participated in a mediated settlement conference that ended in an impasse. (Docket Entry 65.) On April 25, 2025, the parties filed a joint motion to amend the parties' Joint Rule 26(f) Report (Docket Entry 55). (Docket Entry 66.) Therein, the parties state that "should this Court grant Plaintiff's motion for leave to amend her complaint [(Docket Entry 59)], additional discovery will be needed on Plaintiff's retaliation claim." (*Id.* ¶ 5.) "Moreover, the parties agree that this case is not ripe for dispositive motions until a ruling on [said] motion, and that judicial efficiency would best be served by staying the time to file dispositive motions until such a ruling. (*Id.*) The parties jointly request that the Court amend the Joint Rule 26(f) Report as follows:

> If Plaintiff's motion to for leave to amend is denied, dispositive motions will be due no more than 30 days following the court's order. If Plaintiff's motion to amend is granted, discovery will be reopened for period of 30 days following the court's ruling, to allow the parties to conduct discovery on Plaintiff's

4

retaliation claim. Dispositive motions will be due 30 days after the expiration of the re-opened discovery period.

(*Id.* at 2-3.)

On May 9, 2025, the University Defendants filed a Notice in which they indicated their intent to file a dispositive summary judgment motion as to Plaintiff's claims. (Docket Entry 67.) On May 27, 2025, the University Defendants filed a Motion for Summary Judgment (Docket Entry 68) and an accompanying memorandum (Docket Entry 69). That same day, Plaintiff filed her Motion to Stay, in which Plaintiff requests (1) to stay the deadline for filing a response to Defendants' Motion for Summary Judgment and (2) to "move[ ] the Court to conduct oral argument on whether she is entitled to amend her complaint." (Docket Entry 70 ¶ 8; *see also id.* at 1.) On June 17, 2025, Defendants filed a Response opposing said Motion. (Docket Entry 72.)

## II. <u>DISCUSSION</u>

### A. <u>Plaintiff's SAC Motion is granted.</u>

Again, in the SAC Motion, Plaintiff seeks to amend the Complaint by adding new factual allegations, modifying existing allegations, and adding a new Title VI retaliation count against the University Defendants. (*See* Docket Entries 59; 59-1.) Defendants argue that

> Plaintiff's request to amend her complaint is both long overdue and, ultimately, futile. Specifically, Plaintiff's new retaliation claim would be barred by the applicable statute of limitations. And even if not, Plaintiff has failed to demonstrate the requisite causation between her alleged protected activity and Defendants' alleged retaliatory actions. Plaintiff's motion to amend should be denied.

(Docket Entry 60 at 1.) Plaintiff contends that her argument is not dilatory, that her theory of Title VI retaliatory discharge is related to the facts pleaded in the original complaint, and that she sufficiently states facts that causally connect her allegations of adverse actions to Title VI protected activity. (*See* Docket Entry 61 at 1-10.)

5

### i. **Standard of Review**

Federal Rule of Civil Procedure 15(a)(2) allows a party to "amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. (15)(a)(2). Defendants do not consent to Plaintiff's SAC Motion (Docket Entry 60), thus, Plaintiff may amend only with the Court's leave. "The court should freely give [such] leave when justice so requires," *id.*, and should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile," *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citation and internal quotation marks omitted). Other circumstances that may merit denial of leave to amend include "undue delay," "dilatory motive" and "repeated failure to cure deficiencies by amendments previously allowed[.]" *See Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, No. 1:12CV27, 2012 WL 12925831, at *1 (M.D.N.C. Nov. 2, 2012) (unpublished) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Fourth Circuit has further explained that "absence of prejudice, though not alone determinative, will normally warrant granting leave to amend." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

With respect to futility, leave to amend "should only be denied … when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (citations omitted). "An amendment would be futile if the amended claim would fail to survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [("Rule 12(b)(6)")]." *Syngenta Crop Prot., Inc. v. E.P.A.*, 222 F.R.D. 271, 278 (M.D.N.C. 2004) (citation omitted). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

6

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Furthermore, a motion to amend a complaint is futile if, taking all alleged facts as true, the claims accrued outside of the statute of limitations. *Wilkins v. Montgomery*, 751 F.3d 214, 223, 226 (4th Cir. 2014). This is a question of law for the court to decide. *Id.*; *see also See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) ("If proposed claims are barred by the applicable statute of limitations, then they are futile under the standard for amendment of pleadings."). When the statute of limitations would otherwise bar an amendment, Fed. R. Civ. P. 15(c) allows the claim if it "relates back" to the original complaint. *See Haysbert v. Bloomin' Brands, Inc.*, No. CV 4:20CV121, 2021 WL 5003245, at *3 (E.D. Va. June 29, 2021); *see also Moran v. Polk Cnty.*, No. 1:18 CV 300 MR WCM, 2020 WL 9893041, at *5 (W.D.N.C. July 17, 2020) (citing *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000)). Rule 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when[ ]the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B).

## ii. Analysis

### 1. Futility

Because Plaintiff's SAC would survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), because the SAC relates back, and because Defendants have

7

sufficient notice of the amendments proposed in the SAC and would not be prejudiced thereby, leave to amend should not be denied on the basis of futility.

### a. **Plaintiff's proposed Title VI claim is sufficient.**

"To successfully state a claim for Title VI retaliation, a plaintiff must [allege]: (1) she engaged in a protected activity; (2) [Defendants] took a material adverse action against her, and (3) a causal connection existed between the protected activity and the adverse action." *Ricketts v. Wake Cnty. Pub. Sch. Sys.*, 125 F.4th 507, 524 (4th Cir. 2025) (citations omitted). "As in other civil rights contexts, to show 'protected activity,'" a plaintiff asserting a Title VI retaliation claim need only allege that she "opposed an unlawful … practice which [s]he reasonably believed had occurred or was occurring." *Peters*, 327 F.3d at 321.[4]

At this juncture, Plaintiff's proposed allegations in the SAC are sufficient to state a claim for retaliation against Defendants. First, Plaintiff has sufficiently alleged she engaged in a protected activity by alleging that she met with Sherry Wallace, Executive Director of KFBS's Engagement and Inclusion Program ("Wallace"), to report racially discriminatory behavior and to disclose that she planned to file a charge with UNC's Equal Opportunity Compliance ("EOC") office. (Docket Entry 59 ¶ 11; Docket Entry 59-1 ¶¶ 64-65, 68.) The SAC contains allegations of marginalization and an ongoing pattern of discriminatory actions by the Individual Defendants. (Docket Entry 59-1 ¶¶ 32-62.) The undersigned finds that said allegations make it at least plausible that Plaintiff reasonably believed said discrimination was occurring due to her race. Furthermore, Plaintiff alleged she lodged an official complaint of race discrimination with UNC's EOC office.

---

[4] Title VI and Title VII anti-retaliation claims require the same elements, with the exception that no employment relationship is required for a Title VI claim. *See Alberti v. Rector & Visitors of the Univ. of Virginia*, 65 F.4th 151, 156 (4th Cir. 2023) (citation omitted).

(*Id.* ¶ 68.) Thus, protected activity is sufficiently alleged at this stage. *McCarter v. Univ. of N. Carolina at Chapel Hill*, No. 1:20-CV-1050, 2021 WL 4482983, at *16 (M.D.N.C. Sept. 30, 2021) (unpublished) (ultimately quoting *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003)).

Second, Plaintiff has sufficiently alleged Defendants took a materially adverse action against her. Plaintiff alleges that as a result of meeting with Wallace and lodging an official complaint of race discrimination with UNC's EOC office, she was "terminated from the Ph.D[.] program" and that her efforts to transfer to a high-quality academic institution were impeded by her former advisors maligning her. (*See* Docket Entry 59 ¶ 11; *see also* Docket Entry 59-1 ¶¶ 69-98.) An allegation of dismissal from a university's Ph.D. program is sufficient to state a claim for an adverse action. *Dibbern v. Univ. of Michigan*, No. 12-15632, 2016 WL 2894491, at *24 (E.D. Mich. May 18, 2016) (unpublished) (dismissal from Ph.D. program sufficient to establish prima facie case of retaliation as to adverse action). Thus, adverse action is sufficiently alleged at this stage.

Third, Plaintiff has sufficiently alleged a causal connection existed between the protected activity and the adverse actions. The timeline Plaintiff alleges is as follows:

- June 5, 2021 – Plaintiff met with Wallace to report racially discriminatory behavior and to disclose that she planned to file a charge with UNC's EOC office.
- June 8, 2021 –
  - Wallace met with the Individual Defendants
  - Professor Angelica Leigh called her "to inform her that she had learned from Christian and Melwani that [Plaintiff] was causing 'problems' at UNC" and "that her career was at risk[.]"
- June 12, 2021 – Plaintiff met with Matthew Pearsall, Ph.D. Program coordinator ("Pearsall"), to discuss her lack of support in the Ph.D. program; Pearsall told her that job and education at KFBS were in jeopardy; that "she had alienated faculty" and that the view was emerging that she was "no longer a good fit for the program[.]"
- June 17, 2021 – Plaintiff "filed her EOC complaint" and gave Wallace "a summation of the discriminatory conduct she encountered at UNC."
- June 18, 2021 – Plaintiff "lodged an official complaint of race discrimination with the EOC office at UNC and was interviewed by investigators."

9

- July 15, 2021 – Plaintiff spoke with Wallace about the status of the EOC process; Wallace told Plaintiff that she told David Hoffman, a senior associate dean at KFBS, about Plaintiff's concerns about discrimination in the department.
- July 30, 2021[5] –
  - Plaintiff met with Christian and Pearsall to receive her annual review, was told her academic progress was inadequate, and was told she did "that she did not have a path forward in the Ph.D. Program and could transfer to another program or exit with a Masters' Degree[.]"
  - "Defendants communicated their decision to remove [Plaintiff] from the Ph.D. Program[.]"
- August 24, 2021 – the EOC office officially notified the Individual Defendants of Plaintiff's complaint.
- December 2021 – Dr. Barbara Nobles Crawford ("Crawford"), "the only Black Female professor at KFBS, agreed to preview [Plaintiff's] research with an eye toward becoming her advisor and 'second faculty reader[;]' " in response to Crawford's requests to assist Plaintiff, UNC changed its guidelines regarding who was eligible to be a second faculty reader, which disqualified Crawford.
- February 4, 2022 – During an interview, Yale faculty members made it known that they were aware of and concerned about Plaintiff's issues at UNC.

(Docket Entry 59-1 ¶¶ 64-85, 89.)[6]

Plaintiff argues that "[t]he timing suggests that [Plaintiff's] reporting of discrimination immediately drew a backlash from officials in her program to the point that another Black academic saw fit to warn her." (Docket Entry 61 at 6-7.) Plaintiff also argues that "there is a sufficient circumstantial connection based on the timing: within days and a week of the June 5 meeting, [Plaintiff] was warned her future at UNC was at risk." (*Id.* at 7-8.) However, Plaintiff acknowledges that being told of her termination from the Ph.D. program on July 30, 2021, took place "approximately two months after the June 5, 2021[,] meetings between Wallace and

---

[5] July 30, 2021, was the latest date discrimination took place, according to Plaintiff's original Charge of Discrimination filed with the EEOC. (Docket Entry 26-1 at 1.)

[6] The Court previously noted that "Plaintiff alleges disparate treatment and retaliatory acts as late as December 2021, and possibly even as late as February 2022. (Am. Compl. … ¶¶ 109, 117.)" (Docket Entry 37 at 26 n.7.)

[Plaintiff.]" (*Id.* at 7; *see also id.* at 8 (referencing case law wherein temporal gaps of two months were analyzed).) The temporal duration between June 5, 2021, and July 30, 2021, is 55 days.

Here, drawing all inferences in the light most favorable to Plaintiff, the shortest possible temporal duration between the last protected activity (lodging an official complaint with UNC's EOC office on June 18, 2021) and the first adverse action (being "told of her termination from the Ph.D[.] program on July 30, 2021") (Docket Entry 61 at 7) is 42 days. Furthermore, Plaintiff has alleged that the Individual Defendants became aware of her engaging in protected activity one day after meeting with Wallace (Docket Entry 59 ¶ 11) and that it was this occurrence that set in motion the chain of events that ultimately led to her being terminated from the Ph.D. program. (*See id.*; Docket Entry 59-1 ¶¶ 63-79; Docket Entry 61 at 6-10.) The undersigned finds that this alleged temporal proximity together with the existence of said relevant facts alleged by Plaintiff are enough to state a plausible claim for causation. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) ("The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action."). Plaintiff's allegation of "[c]ontinuing [i]nternal [r]etaliation" (Docket Entry 59 at 27; Docket Entry 59-1 at 20) further supports this finding. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

Furthermore, 42 days is "shy of the two-month mark at which the Fourth Circuit has said the inference of causation may be significantly weakened." *See Prosa v. Austin*, No. CV ELH-20-3015, 2022 WL 394465, at *34 (D. Md. Feb. 8, 2022) (unpublished) (citing *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that even though plaintiff's firing came two months and two weeks after receipt of notice by individual who allegedly retaliated against

11

plaintiff that plaintiff had filed EEO complaint, "in the context of this particular employment situation, this length of time does not undercut the inference of causation enough to render [the plaintiff's] prima facie claim unsuccessful")); *see also Alexander v. Bloomingdale's, Inc.*, No. PWG-17-3283, 2019 WL 2162286, at *13 (D. Md. May 17, 2019) (unpublished), *aff'd*, 780 F. App'x 48 (4th Cir. 2019) ("This Court and the Fourth Circuit have held that approximately two months may be sufficient temporal proximity to establish a causal relationship.").[7]  In sum, the allegations in Plaintiff's proposed SAC are sufficient to state a Title VI claim for retaliation at this stage.[8]

###   b.  **The proposed amendments relate back.**

It is undisputed that Plaintiff's proposed Title VI retaliation claim is time barred[9] and requires application of Rule 15(c)(1)(B)'s relation back principle.  (Docket Entry 59 ¶ 3; Docket Entry 60 at 5-7; Docket Entry 61 at 2.)  Defendants argue that since "Plaintiff's claim does

---

[7] *See also Bloomberg v. New York City Dep't of Educ.*, No. 17 CIV. 3136 (SLC), 2025 WL 673059, at *5 (S.D.N.Y. Mar. 3, 2025) ("This six-week period is within the temporal window recognized by courts in the Second Circuit, and therefore plausibly alleges the requisite causal connection between [plaintiff's] protected activity and [defendant's] adverse action against her." (citation omitted)); *Burgess v. Bowen*, 466 Fed. App'x 272, 283 (4th Cir. 2012) ("very little evidence of a causal connection is required to establish a prima facie case of retaliation") (cleaned up); *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018) (proving causation at the pleading stage is "not onerous").

[8] As shown *infra*, the allegations described above suffice to state a claim for retaliation that relates back to the initial pleadings; thus, the Court need not discuss Plaintiff's additional allegations regarding retaliation.  *See Ricketts* 125 F.4th 507, 525 n.4.

[9] There is no federal statute of limitations applicable to suits under Title VI. *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1161 (4th Cir. 1991); *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002). The applicable statute of limitations must consequently "be borrowed from the analogous state statute of limitations."  *Nat'l Aver. Co.*, 947 F.2d at 1161.  In North Carolina, analogous claims must be brought within three years.  *Id.* at 1162 (citing N.C. Gen. Stat. § 1-52(5)).  *McCarter v. Univ. of N.C. at Chapel Hill*, No. 1:20-CV-1050, 2021 WL 4482983, at *6 (M.D.N.C. Sept. 30, 2021).

not arise from the same 'conduct, transaction, or occurrence' identified in her original pleading, her new retaliation claim cannot relate back to the filing date of that pleading." (Docket Entry 60 at 5.)  For the following reasons, the undersigned disagrees.

"[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (quotation omitted)).  The purpose of this rule is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010); *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 468 (4th Cir. 2007) (en banc) ("Rule 15(c) must be understood to freely permit amendment of pleadings and their relation-back so long as the policies of the statutes of limitations have been effectively served.").

In the Fourth Circuit, courts applying Rule 15(c) focus on two factors:

> First, to relate back there must be a factual nexus between the amendment and the original complaint.  Second, if there is some factual nexus an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment.

*Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983*); see also Harley v. Chao*, 503 F. Supp. 2d 763, 771 (M.D.N.C. 2007); *Tucker v. Sch. Bd. of the City of Virginia Beach*, No. 2:13CV530, 2014 WL 5529723, at *6 (E.D. Va. Oct. 31, 2014) (unpublished) (collecting cases).  "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing."  *Pinnix v. Durham Cty. Gov't*, No. 1:11CV668, 2013 WL 357629, at *2-3 (M.D.N.C. Jan. 29, 2013) (unpublished) (citing *Laber*, 438 F.3d at 427).

13

As a threshold matter, the undersigned notes that Plaintiff's description of its

amendments are incomplete. Plaintiff argues that her

> amendment consists of (1) conforming the substantive liability language regarding the discrimination claim under [Title VI] to align with [its] statutory elements[;] (2) [adding] a Title VI retaliation count [against the University Defendants]; [and] (3) an elaboration that Plaintiff's meeting with a senior diversity official on June 5, 2021[,] directly referred to race discrimination, and that Plaintiff's June 18, 2021[,] complaint to UNC's [EOC] office alleged race discrimination. ([Docket Entry 59-1] ¶¶ 64, 68.)

(Docket Entry 59 ¶ 2.) Beyond that representation, a variety of other differences exist between

the Amended Complaint and the proposed SAC. For example, the SAC

- Removes allegations that Plaintiff is a survivor of post-traumatic stress disorder ("PTSD"), that she is a survivor of sexual violence and rape, and that she has a disability (*see, e.g.*, Am. Compl. ¶¶ 5, 22, 49-56);
- Removes allegations regarding Plaintiff's "indicia of employment" (*see id.* ¶¶ 40-44);
- Removes an allegation that "[Plaintiff] considered transferring to Duke because it is a sister school to UNC and her credits would have transferred. However, Melwani and Christian had effectively undercut that opportunity when they communicated negative inaccurate comments about [Plaintiff] to Dr. Angelica Lee, who served on Duke's admission committee" (*id.* ¶ 116);
- Removes allegations regarding examples of discrimination and allegations of damages incurred by Plaintiff (*id.* ¶¶ 120-24, 127-36);
- Removes Counts I through I-IV and Counts VI through X (*id.* ¶¶ 137-67, 172-213);
- Removes requests for punitive damages, cost of suit, and jury trial (*id.* at 28);
- Adds allegations that Plaintiff's participation in the Ph.D. program at KFBS was a contractual relationship (Docket Entry 59-1 ¶¶ 29-31).

Plaintiff is cautioned not to misrepresent the record in her filings. *See United States v. Palmer*,

780 F. App'x 179, 180 (5th Cir. 2019). That said, Plaintiff properly represented several material

alterations between the Amended Complaint and the SAC, including the addition of facts that

make explicit that her allegation of discrimination is based on race, and the addition of a Title

VI retaliation claim.

Here, the undersigned finds that since a substantial factual nexus exists between the SAC and the original Complaint, the allegations proposed in the SAC relate back. Again, the SAC alleges retaliation pursuant to Title VI (Docket Entry 59-1 ¶¶ 105-09; *see also id.* at 24); the Amended Complaint alleged retaliation pursuant to Title VII and 42 U.S.C. §§ 1981 and 1983 (Am. Compl 147-54; 161-67; *see also id.* at 21, 22). As discussed in this Court's Previous Order, Plaintiff's previous claims for retaliation under Title VII and § 1981 failed because she did not allege adverse *employment* action.[10] (*See* Docket Entry 37 at 39-40 (emphasis in original).)

The proposed Title VI retaliation claim in the SAC is based on the same general allegations as those made in the Amended Complaint; Plaintiff does not rely on the new allegations that her participation at KFBS was contractual, nor were said allegations deemed necessary for Plaintiff to have stated a claim, as discussed above. Despite Defendants' representation to the contrary (Docket Entry 60 at 8-9), both the original pleadings and the SAC contain factual allegations that make it plausible that Plaintiff engaged in protected activity by reporting discrimination to UNC's EOC office. (Compl. ¶¶ 8, 83-84, 87-88; Am. Compl ¶¶ 8, 84, 85, 88, 100; Docket Entry 59-1 ¶¶ 7, 64, 65, 68, 80.)

Defendants argue that an amendment that alters the underlying causes of action is less likely to relate back. ( Docket Entry 60 at 8.) To support this argument, Defendants rely on *Duncan v. Pendergrass*, No. 1:19CV459, 2021 WL 11430607, at *10 (M.D.N.C. Apr. 13, 2021) (unpublished), *report and recommendation adopted*, No. 1:19-CV-459, 2021 WL 11430624 (M.D.N.C. May 20, 2021). That case is distinguishable from the instant action for the following reasons.

---

[10] The Court subsequently ruled that Plaintiff's claims made pursuant to § 1983 were deficient and failed to afford the opposing party of fair notice of the nature and basis or grounds of the claim in violation of Federal Rule of Civil Procedure 8(a)(2). (Docket Entry 46.)

In *Duncan*, the plaintiff's original complaint contained federal law claims alleging denial of medical care in violation of the Eighth Amendment and state law claims alleging he was deprived of pain medications and a diet appropriate for his food allergies. *Duncan*, 2021 WL 11430607, at *1. He subsequently sought leave to file an amended complaint in order, in pertinent part, to add retaliation and civil conspiracy claims against defendants who transferred him out of Orange County Jail ("OCJ") to a facility in Virginia. *See id* at *10. The Court ruled that

> Plaintiff's proposed amendments do not arise from conduct or occurrences that were described in the original complaint. The original complaint made no mention of Plaintiff's transfer away from [OCJ] …. In addition, these new causes of action assert entirely new theories of liability against Defendants. Thus, Plaintiff's proposed claims for retaliation and civil conspiracy do not relate back and his motion to amend to add them should be denied as futile.

*Id* at *10.

Here, the SAC's proposed claim for Title VI retaliation is based on the same core of operative facts alleged in Plaintiff's original Complaint and Amended Complain—both of which mention retaliation. (Compl. ¶¶ 8, 11, 146-53, 160-66, 180, 187-88; *see also id.* at 19, 21; Am. Compl. ¶¶ 8, 11, 147-54, 156, 161-67, 181, 188-89; *see also id.* at 21, 22). Although the proposed cause of action in the SAC technically does proceed under a distinct legal theory, it is not entirely new. Rather, "the standard for adjudicating a Retaliation claim under Title VI is identical to that under Title VII and § 1981[.]" *Sullivan v. Wake Forest Baptist Med. Ctr.*, No. 1:20CV281, 2022 WL 1082634, at *4 (M.D.N.C. Apr. 11, 2022). Thus, here, Plaintiff's proposed Title VI retaliation claim relates back.[11] *Accord Tucker*, 2014 WL 5529723, at *8

---

[11] *See also Morales v. NYS Dep't of Lab.*, No. 506CV899NAMATB, 2010 WL 11681390, at *5 (N.D.N.Y. Apr. 21, 2010) ("Because the 'general fact situation' alleged in the original pleading gave the opposing party adequate notice, within the statute of limitations, of the matters raised in the amended pleading, the proposed amendments should relate back under Rule 15(c). … While the

("While the Amended Complaint provides much greater detail and adds additional counts not brought in the Original Complaint, there is a factual nexus between the two because both discuss events and occurrences that led up to Plaintiff's termination—the ultimate harm that she claims was in retaliation for her whistleblowing and because of discrimination against her race. Hence, a common core of operative facts links the Original and Amended Complaints.").

Similarly, Plaintiff's original EEOC charge of discrimination, Complaint, and Amended Complaint all allege discrimination based on race and disability arising from the same conduct, but the SAC seeks to remove allegations that Plaintiff even has a disability, and Plaintiff makes no allegations of discrimination on any basis other than race therein. Thus, to the extent the SAC seeks to add facts that plaintiff alleges support a more explicit allegation of race discrimination, the undersigned finds that amendment relates back as well.

Ultimately, while lacking some specificity, Plaintiff's original pleadings at least attempted to set out claims for retaliation in response to reporting discrimination, and the allegations therein make it least plausible that said discrimination was motivated by racial animus. The SAC describes the same conduct, transaction or occurrence as those set forth in said pleadings, just with more detail, and it eliminates disability as an alleged basis for discrimination. Accordingly, the undersigned concludes that the SAC relates back to the operative pleadings pursuant to Rule 15, and the Defendants' objection is thus overruled. *See*

---

proposed amended complaint adds various new alleged acts of discrimination/retaliation, it follows up on the allegation of the original complaint that plaintiff 'was retaliated against through long term and continuous subjection to disciplinary proceedings, [harassment], denial of training, and unequal terms and conditions of employment.' … The new Title VI cause of action … is … a natural offshoot of plaintiff's original Title VII retaliation claim and the allegations in her first complaint….").

*Su v. Lovin Constr. Co., Inc.*, No. 1:21-CV-00360-MR-WCM, 2023 WL 3431219, at *4 (W.D.N.C. May 12, 2023) (unpublished); *Pinnix*, 2013 WL 357629, at *3.

**c. Defendants had notice of the claims in the SAC and will not be prejudiced by them.**

In this circuit, again, it is well-settled that Rule 15 is chiefly concerned with ensuring (i) that there is a factual nexus between the amendments and the prior pleading, and (ii) that a defendant had sufficient notice of these new claims such that he will not suffer prejudice if the amendments are found to relate back. *Vitullo v. Mancini*, 684 F. Supp. 2d 747, 754 (E.D. Va. 2010) (collecting cases). A defendant is not prejudiced by an amendment that relates back if the defendant was on notice of the possible claims and liability through an EEOC charge. *See Tucker*, 2014 WL 5529723, at *2.

Here, the Court finds that granting Plaintiff leave to amend her Complaint will not be prejudicial to Defendants. *Davis*, 615 F.2d at 613 ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case."). Defendants are not prejudiced by the SAC because the underlying subject matter of the proposed Title VI retaliation has been the subject of litigation for a considerable period of time. *See SunTrust Banks, Inc. v. Robertson*, No. 2:09CV197, 2010 WL 11569411, at *4 (E.D. Va. Mar. 9, 2010) (unpublished); *see also Sullivan*, 2022 WL 1082634, at *4 (find that defendants would not be meaningfully prejudiced by allowing plaintiff to add Title VI retaliation claim). As shown above, contrary to Defendants' contention, the SAC does not add "an entirely new claim of retaliation based on newly[ ]alleged facts regarding her complaints of race discrimination" (Docket Entry 60 at 9 n.1 (citing *Laber*, 438 F.3d 404, 427 (4th Cir. 2006).) Nor would the

18

SAC require substantial gathering and analysis of facts not already considered by defendant; and although discovery has occurred, additional time will be granted to complete discovery and Defendants will be granted leave to amend their Motion for Summary Judgment, as discussed below. Moreover, the SAC is not offered shortly before or during trial, as a trial date has not yet been set in this action. (*See* Docket Entry 56.) In sum, the undersigned does not find it appropriate to deny the SAC Motion based on futility.

### iii. <u>No other factor suffices as a basis to deny leave to amend.</u>

Again, the SAC Motion is still subject to dismissal if the Court finds, on the part of Plaintiff, bad faith, undue delay, dilatory motive, and repeated failure to cure deficiencies by amendments previously allowed. *SunTrust*, 2010 WL 11569411, at *3. Defendants do not argue that Plaintiff acted in bad faith or with a dilatory motive, and the undersigned finds nothing in the record to suggest that she did. Accordingly, the Court finds that neither of these factors provides a basis to dismiss the SAC Motion.

Defendants do argue, however, that "Plaintiff's delay and repeated failure to bring her Title VI retaliation claim earlier in these proceedings thus significantly weighs against her motion to amend." (Docket Entry 60 at 4.) "Delay alone is often insufficient to deny a motion to amend the complaint made pursuant to Rule 15(a)." *Tabor v. Nat'l Interstate Ins. Agency, Inc.*, No. 1:07CV151, 2008 WL 11471053, at *4 (M.D.N.C. Apr. 15, 2008); *see also Davis*, 615 F.2d at 613 ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."). But where the delay is undue or intentional, a district court may deny a motion to amend. *See Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (citing *Foman*, 371 U.S. at 182).

19

Here, Defendants do not argue that Plaintiff's delay was purposeful, intentional, or that it was designed to harass them. Although they argue that "Plaintiff's acknowledgment that her amendment adds new factual allegations also cuts against her contention that the amendment would not be prejudicial" (Docket Entry 60 at 9 n.1), this mention of prejudice is argued in connection to new factual allegations, not to delay. Indeed, Defendants do not identify any way in which they have been actually prejudiced by Plaintiff's delay. Moreover, the SAC Motion was filed ahead of the deadline in the scheduling order (Docket Entry 55 ¶ C.3.; Docket Entry 56 ¶ 2) and both parties had contemplated the possibility that Plaintiff would so amend her pleadings, and that such an amendment would require no more than 30 additional days of discovery (Docket Entry 66 ¶¶ 2-5; *see also id.* at 2-3). As discussed below, Court has modified the discovery deadlines pursuant to the terms stipulated in the consent order. Thus, the Court finds that this factor provides no basis to dismiss the SAC Motion. *Simpson v. Specialty Retail Concepts, Inc.*, No. C-88-100-WS, 1992 WL 752146, at *4 (M.D.N.C. Jan. 27, 1992) (unpublished) ("Because the Court finds no purposeful dilatoriness by [plaintiff] or prejudice to [defendant], [plaintiff's] motion to amend its Amended Complaint is granted.") (capitalization removed).[12]

Lastly, this is not a case where Plaintiff has repeatedly failed to cure deficiencies. Plaintiff has previously moved to amend her Complaint twice (Docket Entries 21, 47), been granted leave to do so once (Docket Entry 25) and been denied leave to do so once (Docket Entry 52); there has been no instance of this Court issuing any order directing plaintiff to

---

[12] *See also, e.g., Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) (two-year delay between complaint and motion to amend is not by itself sufficient to deny motion); *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380 (2d Cir.1968) (three-year delay is not alone sufficient reason to deny motion to amend).

modify her pleadings followed by a failure by Plaintiff to comply with such direction. *Cf. Hunter v. N. Carolina Dep't of Adult Correction*, No. 5:23-CT-3087-BO, 2023 WL 6037424, at *1 (E.D.N.C. Aug. 31, 2023) (unpublished), *aff'd*, No. 23-6904, 2024 WL 1406215 (4th Cir. Apr. 2, 2024). Thus, Plaintiff has not repeatedly failed to cure deficiencies, and there is no such basis to deny the SAC Motion. *Carey v. Hannah, Kendrix, Zachary & Assocs., LLC*, No. 111CV01782SCJAJB, 2011 WL 13322458, at *3 (N.D. Ga. Sept. 2, 2011) (unpublished).

Ultimately, therefore, each of Defendants' arguments as to why the SAC Motion should be denied fails, and the undersigned finds no other basis on which it is due to be denied. Accordingly, the SAC Motion is granted; Plaintiff is ordered to file her Second Amended Complaint (Docket Entry 59-1) as a separate document within five days of the issuance of this Order and Recommendation, and Defendants are ordered to file an answer thereto within the time prescribed by the Federal Rules of Civil Procedure. *Accord Nutrients Plus, LLC v. Huber*, No. 2:19-CV-102, 2019 WL 8888176, at *3 (E.D. Va. June 25, 2019) (unpublished); *see also Millare v. Jackson*, No. 220CV0451WBSJDPPC, 2021 WL 2853297, at *2 (E.D. Cal. July 8, 2021) (unpublished).

B. **The 26(f) Motion is granted.**

Again, in the Rule 26(f) Motion,

The parties agree that should this Court grant [the SAC Motion], additional discovery will be needed on Plaintiff's retaliation claim. Moreover, the parties agree that this case is not ripe for dispositive motions until a ruling on [the SAC Motion], and that judicial efficiency would best be served by staying the time to file dispositive motions until such a ruling. …

If Plaintiff's motion to amend is granted, discovery will be reopened for period of 30 days following the court's ruling, to allow the parties to conduct discovery on Plaintiff's retaliation claim. Dispositive motions will be due 30 days after the expiration of the re-opened discovery period.

21

(Docket Entry 66 ¶ 5; *see also id.* at 2-3.)  The undersigned agrees with the parties' arguments and the relief they jointly request.  Accordingly, the Rule 26(f) Motion is granted.  *Accord* M.D.N.C. LR 7.3(k) (uncontested motions are ordinarily granted); *Hardin v. Poole*, No. 1:19CV674, 2022 WL 21828083, at *2 (M.D.N.C. Feb. 17, 2022) (unpublished) (same), *report and recommendation adopted*, No. 1:19CV674, 2022 WL 21828075 (M.D.N.C. Mar. 21, 2022). Having granted the SAC Motion, discovery is reopened—for the limited purpose of allowing the parties to conduct discovery on Plaintiff's Title VI retaliation claim—for a period of 30 days following the issuance of this Order and Recommendation.

**C.  <u>The remaining pending motions should be denied.</u>**

As mentioned above, Defendants have filed a Motion for Summary Judgment addressing only Plaintiff's discrimination claim and not her retaliation claim; in turn, Plaintiff has filed the Motion to Stay.  (*See* Docket Entries 68, 69, 70.)  In light of the reopening of discovery, the undersigned recommends that Defendants' Motion for Summary Judgment should be denied without prejudice to refile if needed upon the conclusion of discovery. *Thomas v. City of Annapolis*, No. CV BPG-16-3823, 2018 WL 1183657, at *4 (D. Md. Mar. 7, 2018) (unpublished); *Raycap Asset Holdings Ltd. v. Gora LLC*, No. 320CV00363KDBDCK, 2023 WL 3396600, at *3 (W.D.N.C. May 11, 2023) (unpublished) (allowing amended complaint, reopening limited discovery, denying without prejudice summary judgment motion, setting deadline for new dispositive motions); *see also Pender v. Bank of Am. Corp.*, No. 3:05CV238-C, 2005 WL 2544300, at *2 (W.D.N.C. Oct. 12, 2005) ("Rather than stay the motion for summary judgment, which creates the appearance of undue judicial delay, the court will administratively deny [said] motion without prejudice as to refiling at the conclusion of discovery.").  "While the court regrets the need to re-open discovery

in a case that has been pending for such a lengthy period, the court finds the ends of justice necessitate such action in this matter." *United States ex rel. Howard v. Caddell Constr. Co., Inc.*, No. 7:11-CV-270-H, 2019 WL 13194222, at *3 (E.D.N.C. Sept. 25, 2019) (unpublished).[13]

Furthermore, in light of the ruling herein, the undersigned recommends the Motion to Stay be denied as moot. *United States v. Wise*, No. 5:14-CV-844-FL, 2015 WL 7302245, at *1 (E.D.N.C. Nov. 18, 2015) (unpublished), *aff'd*, 639 F. App'x 193 (4th Cir. 2016); *see also Neal v. United States*, No. 11 C 7406, 2011 WL 6119148, at *1 (N.D. Ill. Dec. 8, 2011) (unpublished) ("Although the plaintiffs have not yet filed a reply brief in support of their motion … the court concludes that a reply is unnecessary."). As stated above, the parties agree that the Court should stay the time to file dispositive motions if amendment were permitted. (Docket Entry 66 ¶ 5.) However, the undersigned—having recommended the denial of Defendants' Motion for Summary Judgment, having granted the Rule 26(f) motion, having granted the SAC Motion, and having established the foregoing filing deadlines—finds Plaintiff's requests to stay the deadline for filing a response to the Motion for Summary Judgment and to conduct oral argument regarding amendment moot, and recommends that the Motion to Stay be denied on that basis.

---

[13] "As a general rule, summary judgment is appropriate only after 'adequate time for discovery.' " *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (citation omitted). "[S]ummary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Id.* (citation omitted); *see also Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 719 (4th Cir. 1991) ("Summary Judgment may only be entered after 'adequate time for discovery.' ") (citation omitted). "The undersigned concludes that [Defendants' Motion for Summary Judgment] is premature [and thus] recommends denying [it.]" *Joe Hand Promotions, Inc. v. Lost Jewel Invs., LLC*, No. 1:22CV30, 2023 WL 5237104, at *3 (M.D.N.C. Aug. 15, 2023) (unpublished), *report and recommendation adopted*, No. 1:22-CV-30, 2023 WL 5834802 (M.D.N.C. Sept. 8, 2023).

III.     **CONCLUSION**

For the reasons stated above, **IT IS THEREFORE ORDERED** that Plaintiff's Second Motion for Leave to File Second Amended Complaint, (Docket Entry 59), is **GRANTED**.  Plaintiff is **ORDERED** to file her Second Amended Complaint (Docket Entry 59-1) as a separate document within five days of the issuance of this Order and Recommendation, and Defendants are **ORDERED** to file an answer thereto within the time prescribed by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Joint Motion to Amend the Parties' Joint Rule 26(f) Report (Docket Entry 66) is **GRANTED**.  The Court **ORDERS** that Discovery is hereby reopened for the limited purpose of allowing the parties to conduct discovery on Plaintiff's Title VI retaliation claim; **discovery shall close 30 days after the issuance of this Order and Recommendation**.

**IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 68) should be **DENIED without prejudice** to refile if needed upon the conclusion of discovery.  If this recommendation is adopted, dispositive motions shall be due within 30 days of the close of the limited discovery period.

**IT IS FURTHER RECOMMENDED** that the motion entitled Plaintiff's Motion to Stay Deadline to Respond to Defendants' Motion for Summary Judgment and for Oral Argument on the Pending Motion to Amend Complaint (Docket Entry 70) be **DENIED as moot**.

  /s/  Joe L. Webster
United States Magistrate Judge

June 24, 2025
Durham, North Carolina

24